THE STATE OF KANSAS, *ex rel. S. B. Bradford, Attorney General*, v. THE BOARD OF COMMISSIONERS OF HARPER COUNTY.

COUNTY-SEAT ELECTION, a *Nullity*. Where a county was organized in 1873, and the county seat was permanently located by a vote of the electors of the county, and afterward, in 1878, the county seat was relocated at another place by another vote of the electors of the county, and the organization of the county and the location and relocation of the county seat were ratified by the legislature, *held*, that no election could be held in the year 1884 under the statute of 1861, relating to the organization of new counties, and the amendments thereto, ( Comp. Laws of 1879, ch. 24, ¶¶ 1363, 1364,) although the organization of the county, and the prior elections to locate and relocate the county seat, may not have been entirely regular.

*Original Proceeding in Mandamus.*

ACTION brought in this court February 6, 1885, by *The State*, on the relation of the attorney general, against *The*

*Board of Commissioners of Harper County,* and the county clerk thereof, to compel said board to canvass the votes cast in said county on November 4, 1884, for the permanent location of the county seat thereof, and to declare the result of said election. The opinion, filed at the November, 1885, session of the court, states the material facts.

*S. B. Bradford,* attorney general, for The State; *Rossington & Smith, I. P. Campbell,* and *Finch & Finch,* of counsel.

*R. B. Shepard, W. C. Webb,* and *Grove & Shepard,* for defendants.

The opinion of the court was delivered by

VALENTINE, J. : On November 4, 1884, that being the day of the general election, a special election was held in Harper county, for the relocation of the county seat of that county, and whether such special election is valid, or not, is the only question presented to this court for consideration. It is admitted that such special election was not held under the acts of the legislature relating to the location and removal of county seats. (Comp. Laws of 1879, ch. 26; Laws of 1881, ch. 89.) And it is further admitted that unless it is valid under the act of 1861 relating to the organization of new counties, (Gen. Stat. of 1868, ch. 24,) as amended by the act of 1876, (Laws of 1876, ch. 63,) it is not valid at all, and was held without any authority whatever. It appears from the alternative writ, this being an action of mandamus, that Harper county was organized *de facto* on August 20, 1873. Of course a temporary county seat was located by the governor at the time of the organization of the county; for such is the law. (Gen. Stat. of 1868, ch. 24, §1.) And afterward, as alleged in the alternative writ, the county seat of said county was permanently located by a vote of the people of Harper county at a place called Bluff City, in said county. It would seem that this should end the case; for if one election was held under the act of 1861, (Gen. Stat. of 1868, ch. 24, §§ 5, 6; Laws of 1872, ch. 106; Comp. Laws of 1879, ch. 24, ¶¶ 1363, 1364,) to permanently

locate the county seat, no second election for such a purpose could be held under any of the provisions of such act, including the amendments thereto. The election to permanently locate a county seat under that act can only be had upon the organization of a new county.

It is claimed, however, that the organization of Harper county in 1873 was fraudulent; but even if it was, it was still a *de facto* organization, and the legislature of 1874 ratified and confirmed such organization. (Laws of 1874, ch. 77, § 28; *The State, ex rel., v. Stevens,* 21 Kas. 210.) It further appears that on November 5, 1878, that being the day of the general election, the people of Harper county again held an election for the location, or relocation, of their county seat. Whether this election was held under the general statutes for the relocation of county seats, or under the statutes relating to the organization of new counties, or under some other statute, is not shown. It is however alleged in the alternative writ that this election was only a "pretended and unlawful election." At this election, however, the town of Anthony received a majority of the votes cast, and was declared to be the county seat. Afterward, and on March 8, 1879, the legislature, by an act passed at that time, duly ratified, confirmed and made valid the last-mentioned election, and made Anthony the county seat for the time being. (Laws of 1879, ch. 110.) We would think that this act is valid, for the legislature has the power, with the consent of a majority of the electors of a county, to change and relocate the county seat. (Const., art. 9, § 1.) For the purposes of this case, however, we would think that it makes no difference whether the act is valid, or not. If the county seat had not been permanently located prior to the passage of that act, then we would think that the act would clearly be valid; but even if the county seat had been so located, still we would think that the act would be valid. This act in terms made Anthony only temporarily the county seat; but it was temporary only in the sense and upon the contingency that the electors of Harper county should at the next general election, to be held in 1879, relocate their county seat at some other point.

If in the course of things no election should be held as provided for in that act, then the county seat would remain located at Anthony about as permanently as county seats are usually located; for no county seat is so permanently located that it cannot be removed by a majority of the electors of the county, if they choose to remove it, and do so in a legal and proper manner. An election was held for the relocation of the county seat of Harper county at the time prescribed by the act; but the election was so fraudulent that it resulted in nothing. (*The State, ex rel., v. Stevens*, 23 Kas. 456.) And therefore, notwithstanding this election, the county seat still remained at Anthony; and remained there as located by a vote of the electors of the county and the aforesaid act of the legislature of 1879 ratifying such vote.

Under any view of the case that we may take, we think the election held on November 4, 1884, is a nullity; for, as before stated, that election was held upon the authority of §§ 5 and 6 of the act of 1861, relating to the organization of new counties, and was not held upon the authority of any other act. Now if the county seat was located permanently at Bluff City by an election held under that act, then the force of that act was completely spent by such election, and no subsequent election could be held under the act. But if the county seat was not permanently located at Bluff City by any such election, then why was not the election held at the time of the general election in 1878, which located the county seat at Anthony, a legal and valid election, and a legal and valid election under the act of 1861, relating to the organization of new counties? And why did not such election permanently locate the county seat at Anthony? And if the election held in 1878 was legal and valid, then of course no second election could be held under the act of 1861, again permanently locating the county seat of Harper county. But if such election was not legal and valid, then how can the election held in 1884 be legal or valid? Why should the election held in 1878 be void and the election held in 1884 be valid? Twice before the election held in 1884

*County-seat election, a nullity.*

20—34 KAS.

the county seat of Harper county had been located by a vote of the electors of Harper county, and both of such elections had been ratified by the legislature; and after such elections and ratifications certainly no valid election could be held under the act of 1861 relating to the organization of new counties. Besides, Harper county is not new; it has had an existence and a county seat since 1873, and the county seat has been at Anthony since 1878. Besides, the election held in 1884 not only ignored the statutes relating to the location and removal of county seats, (Comp. Laws of 1879, ch. 26; Laws of 1881, ch. 89,) but it was held in violation of such statutes.

We have already sustained a motion to quash the alternative writ in this case, and as the parties acting for the plaintiff do not desire to take any further steps in the case, the action will be dismissed.

HORTON, C. J., concurring.

JOHNSTON, J., having been of counsel, did not sit.