THE STATE, *ex rel.* S. U. MITCHELL, *County Attorney of Harper Co.*, v. T. H. STEVENS, *et al.*

CANVASSING VOTES *Mostly Fraudulent; Mandamus Refused; Discretion of Court.* At an election held in the county of Harper for county officers, and for the location of the county seat, the returns made to the canvassing board showed a vote of 2,947. There were in fact only about 800 legal voters in the county. On application for a mandamus to compel the board to canvass these returns and declare the result, *held*, that notwithstanding the fact that the duties of the board are mainly ministerial, and that it is not charged with the duty of inquiring into the reception of illegal or the rejection of legal votes, or fraudulent practices at the election, this court will, in the exercise of a sound discretion, not even apparently sanction so gross an outrage on the purity of the ballot-box by issuing a mandamus, or compel, in the name of a technical compliance with duty, the canvass of returns which are so palpably a mere farce as an expression of popular will as well as a crime against republican institutions. *Held further*, That returns so grossly and manifestly untrue have no force as evidence, and have no value in any proceeding to determine the result of the election.

### *Original Proceedings in Mandamus.*

ON the 22d of November, 1879, an alternative writ of mandamus was issued out of this court, and directed to *T. H. Stevens, F. B. Singer,* and *J. W. Clehouse,* commissioners of Harper county, commanding them as a canvassing board to meet, on the 12th day of December, 1879, at the county seat of said county, and then and there to canvass and declare the result of the election held on the 4th day of November, 1879, for county officers and on the question of the permanent location of the county seat of that county, or to show cause, etc. The defendants appeared and answered, showing cause. The subjoined opinion was filed February 24, 1880.

*S. U. Mitchell,* county attorney, *C. S. Bowman,* and *J. W. Ady,* for plaintiff.

*Davis & Jetmore,* for defendants.

The opinion of the court was delivered by

BREWER, J.: This is an action of mandamus, to compel the defendants, as canvassing board of the county of Harper, to canvass and declare the result of the election held in November last for county officers, and on the question of the location of the county seat. The defendants, for one ground of defense, return that there were only about 800 legal voters in said county at the date of said election, whereas the returns as made show a vote of 2,947 purporting to have been polled, and that therefore at least 2,147 of such votes were fraudulent and illegal, and that by reason thereof it is impossible to determine and declare the will of the people or the true result of such election. A motion has been made to strike out this portion of the return, and upon that motion the case is submitted to us. This motion is made in no technical spirit, but, as counsel agree, that there may be a speedy determination of the substantial questions involved. And we meet counsel in the same spirit. Our general knowledge of matters and events assures us that in an outlying and frontier county like Harper, there is no such number of legal voters, and hence that the return of the commissioners that the large majority of such apparent vote is illegal and fraudulent, is substantially correct.

The question therefore presented is not, whether, when there have been, or is charged to have been, here and there, illegal votes received, or legal votes rejected, or fraudulent or irregular practices on the part of the officers in any one or more voting precincts, the county board has a right to inquire into the merits of such votes, or the conduct of such officers, but whether, when there are sent in to the canvassing board returns showing such an enormous number of votes as to be perfectly obvious that they are not true returns of legal votes actually cast, but simply manufactured evidences of an attempt to defeat the popular will, this court will, by mandamus, compel the board to accept as true these fraudulent returns and canvass, and declare the result as though they even *prima facie*

showed the actual vote. Counsel for relator rely upon the case of *Lewis v. Commissioners*, 16 Kas. 102, in which this court decided that the duty of a canvassing board is substantially ministerial, and that it is not to reject returns regular in form and genuine, on the ground that illegal votes were received, or other frauds practiced at the election; that such matters are to be inquired into by a tribunal for contesting elections, or in *quo-warranto* proceedings; while the defendants rely on the case of *The State v. Marston*, 6 Kas. 524, in which this court, after a canvass had been made, refused to compel, by mandamus, the commissioners to move their records and keep their office at the place declared by the canvass to be the chosen county seat, on the ground that just such an outrage as appears in this case had been committed in the election. We are clearly of the opinion that the principle of the latter case must control this. It was said in that case, as it has been said in others, that "the writ of mandamus lies, to a great extent, within the discretion of the court where the application is made." Now, while canvassing is a ministerial duty, yet it would be a singular exercise of its discretion for a court whose duty it is to uphold purity, justice, and honest dealing, to give even apparent sanction to such an outrage so gross and so manifest. A canvass is a *prima-facie* recognition of the truth of the returns. Compelling a canvass is compelling a *prima-facie* recognition of these returns as true statements of the votes cast. But these returns are manifestly rotten and worthless, and the truth is not in them. They do not fail of absolute truth through mere mistake or error. They are an intentional and immense lie. They are without value in any proceeding or in any court, as evidence of votes cast, for while legal and honest votes were cast, yet no court is under obligation to attempt to sift the grain of truth from the mass of falsehood. It is urged that individuals were candidates for office at this election, and that unless a canvass be made there is no way of determining who is elected, and the incumbents thus continue to hold offices which they are not entitled to hold, and for which the people have chosen

other persons; that these candidates may be in no manner implicated in the wrong, and hence they should not be deprived of the emoluments of the offices to which they are elected. There may be a hardship in this, but if the returns are not true, how will they show who is elected? If a party can base his right to an office upon nothing other than that which is so manifestly untrue, he can hardly ever expect to obtain or hold it. If it be said that this wrong may only have occurred in the returns from certain precincts, and that the others should have been canvassed, we reply that no such question is here presented. The answer presents the matter as a whole, and as though the wrong was universal. Perhaps if there are returns from any precincts not deserving of this condemnation, they should be canvassed, and the result both as to officers and county seat declared therefrom. Perhaps on the basis of such unimpeached returns the various successful candidates may by direct proceeding establish their right to office. It will be time enough to consider those questions when properly before us. All we now decide is, that at no stage of the proceedings will this court lend its sanction to an outrage so gross and flagrant as that disclosed by the answer, and never by mandamus compel any other tribunal to accept and recognize as true that which is so manifestly a deliberate and prepared lie.

We might perhaps stop here, but we feel that we should fail in our duty if we did not call the attention of our fellow-citizens to the great wrong disclosed herein, as well as to its demoralizing influences. No such outrage could have been perpetrated without the connivance, if not the open approval, of many. There was a "county-seat fight," it is true, and it is one of the sad things connected with such fights, that the obligation of honesty in elections seems to be so often forgotten. Men, honorable men, will tolerate that which in any matter of private dealing they would scorn. Yet a dishonest vote cast at one election is the only the parent of many dishonest votes at another. And the better the men who countenance or even tolerate the one, the larger the number of the offspring.

There are men good and true in Harper county, and we appeal to them for the good name of their county, and for the influence upon free institutions and pure elections elsewhere, to see to it in the future that no dishonest vote be polled or false return made, no matter what may be the question or how deeply they may be interested in the result.

With this appeal we close this opinion. The motion to strike out will be overruled, and judgment entered in accordance with the stipulation on file.

All the Justices concurring.