In the Matter of the Application of the People ex rel. William C. Daley et al., Respondents, for a Mandamus, v. Frank Rice, as Secretary of State, et al., Appellants.

Any citizen may invoke the aid of the courts to compel the performance by a public officer of a public duty, and so an elector may, at least in the case of the death of the candidate interested, make application to the proper tribunal for a mandamus to compel the state board of canvassers to reject and disregard a paper purporting to be a return of a board of canvassers, but which is not properly signed and certified, and does not give the results of a proper legal canvass, and to consider only a proper return.

The duty of a county clerk, when acting under the authority of the statute (§§ 3, 9, art. 1, tit. 5, chap. 130, Laws of 1842), as secretary of the board of county canvassers is purely ministerial; he has no authority to sit in judgment upon the action of that body, and may not refuse to certify as correct, and attest by his signature, a statement made by the board of the result of an election, because, in his opinion, it does not give the correct legal result. If the statement, as made, correctly sets

450     People ex rel. Daley et al. *v.* Rice et al.     [Dec.,

Statement of case.

forth the action of the board, it is his duty to certify and sign it, without regard to the question as to whether the board has done its duty in a valid way or not.

In case the county clerk refuses to perform his duty in this respect, the remedy is not confined to the procuring of a mandamus to compel performance, but the board has power to designate one of its number as secretary *pro tem.*, to make the certificate and attest under its direction the correctness of the statement, to file it in the county clerk's office, and to prepare and send certified copies thereof to the proper state officers, in case of the refusal of the county clerk as such so to do.

Where, upon application for a writ of mandamus requiring the state board of canvassers to disregard the return made by a board of county canvassers, the moving papers alleged, in substance, that the county board illegally canvassed the result of the returns made to it by the inspectors of election and made up its canvass in opposition to said returns, thereby giving a plurality to one candidate when the returns showed that the opposing candidate was elected, and then made a return to the state board, proper and valid on its face, but which gave the results of such illegal canvass, and these allegations were not denied in the opposing papers, *held,* that the court below, in its proper branch, would have the power to command the state canvassers to canvass without regard to such return ; also, that in case another return, properly authenticated, containing the result of a legal canvass was subsequently sent, that the state board could canvass it.

(Argued December 11, 1891; decided December 29, 1891.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made December 7, 1891, which affirmed an order of Special Term, of the body of which the following is a copy :

"It is ordered that a writ of peremptory mandamus issue out of and under the seal of this court, commanding and requiring the said state board of canvassers that they issue a certificate of election to the office of senator in the fifteenth senatorial district of this state, disregarding the so-called return of the board of county canvassers of the county of Dutchess, which is signed by John Mylod, as secretary of said board *pro tem.*, and is not signed by the county clerk of Dutchess county or certified under the seal of said county clerk, but that instead thereof, they consider only such return from the county of Dutchess as may hereafter be filed containing the signatures

of the county clerk of the county of Dutchess and the chairman of said board of county canvassers, and issued under the seal of said county clerk, and that in their certificate of election the said state board of canvassers certify and declare that the person who appears upon the certified returns and statements made by the boards of canvassers of the counties of Columbia, Putnam and Dutchess, in pursuance of the statute and the order of the court, to have received the greatest number of votes, was duly elected senator from the said fifteenth senatorial district."

The following facts appeared : Said board met November 10, 1891, and continued in session until November 23 and on that day having completed the canvass and made a final determination of the result and of the whole number of votes cast in the county and made statements as required by law, which were certified by the board to be correct and attested by its chairman, it presented them to the county clerk, as secretary of the board, with a request that he attest the same as required by law. He refused to do so and the board thereupon by resolution appointed John J. Mylod, one of its members, secretary *pro tem.* and directed him, as such, to sign and attest said statement. Three statements were thus signed and attested and by direction of the board one of them was forwarded to the governor, secretary of state and comptroller, and another signed and attested by the chairman of said board was delivered to the county clerk in order that he might attest and record the same, which he declined to do or to send certified copies to the state officers. Mr. Deane the candidate who the relators claim was elected, died soon after the election. This application was made by a voter of Dutchess county and also a voter of Columbia county, both of which are in said senatorial district.

Further facts appear in the opinion.

*Isaac H. Maynard* and *Delos McCurdy* for appellants. The state board of canvassers has not refused to perform any part of its duty, and a mandamus was improperly granted. (*People* v. *Taylor*, 30 Howard's Practice Reports,

85.) Mandamus should not be granted when the relator shows
no right to the relief, which it is his ultimate object to attain.
(*People* v. *Tremaine*, 29 Barb. 96 ; *People* v. *Burrows*, 27 id.
89 ; *People* v. *Supervisors*, 12 id. 217.) The original statements
of the board of county canvassers of Dutchess county, duly
certified by the board, attested by the chairman of that board
and by its secretary *pro tem.*, are sufficient statements of the
votes cast in Dutchess county ; and such statements may be
lawfully acted upon by the state board in determining and
declaring what person was duly elected senator in the fifteenth
district. (Code, § 933 ; Chap. 130, Laws of 1842, art. 1, tit. 5,
§ 6 ; *Mayor* v. *Sanch*, 105 N. Y. 210 ; *People* v. *Chapin*, Id.
316 ; *Stief* v. *Hart*, 1 id. 20 ; 1 Kent's Comm. [5th ed.] 464 ;
*Foliamle's Case*, 5 Coke, 116 ; *Weed* v. *Tucker*, 19 N. Y.
422 ; *People* v. *Supervisors*, 13 Abb. [N. C.] 421.)

*J. Rider Cady* for respondents. The relators have the
right to maintain this proceeding. (*People ex rel. Boltzer* v.
*Daley*, 37 Hun, 461 ; *People ex rel. Welling* v. *Meakim*, 31
N. Y. S. R. 930 ; *People ex rel. Waller* v. *Bd. of Supervisors*,
56 N. Y. 249 ; *People ex rel. Wright* v. *Common Council*, 16
Abb. [N. C.] 96 ; *People ex rel. Hall* v. *Supervisors*, 13 id.
421 ; *People ex rel. Lawrence* v. *Supervisors*, 11 Hun, 306 ;
*People ex rel. Garbett* v. *Rochester, etc., R. Co.*, 14 id. 371 ;
*People ex rel. Robinson* v. *Board of Supervisors*, 17 id. 501,
505 ; *Matter of Noyes*, 126 N. Y. 400.) The so-called
"Mylod statement" is fatally defective and wholly unauthor-
ized by statute. (R. S. part 1, chap. 6, tit. 5, art. 1, §§ 1–15,
18, 19, 20, 31 ; *People* v. *County Board of Canvassers*, 46
Hun, 390 ; *People* v. *Cook*, 8 N. Y. 93 ; *People* v. *Gregg*, 54
Hun, 596 ; *Felt's Case*, 11 Abb. [N. S.] 203 ; *People* v. *Pease*,
27 N. Y. 45 ; *People* v. *Board of Canvassers*, 12 Abb. [N.
C.] 77 ; *Kortz* v. *Board of Canvassers*, Id. 84 ; *People* v.
*Board of Canvassers*, Id. 95 ; Cooley's Const. Lim. [5th ed.]
782 ; Meachem on Public Officers, 135.) The writ of man-
damus is an appropriate remedy. (*People ex rel.* v. *County
Canvassers*, 46 Hun, 390, 393 ; Wood on Mandamus, 113,

119, 120; 15 Ia. 538; 2 Minn. 180; 29 Ill. 413.) The circumstances disclosed by affidavit warranted the action of the court. (Chap. 240, Laws of 1847, § 29; R. S. part 1, chap. 6, tit. 5, art. 3, § 27.) A formal demand was not an indispensable condition precedent to the issuing of the writ. (*Dyckman* v. *Valiente*, 42 N. Y. 549; *Reading* v. *Samphier*, 31 N. Y. S. R. 53; Wood on Mandamus, 93.)

*Joseph H. Choate, Matthew Hale, Wm. A. Sutherland, J. F. Parkhurst* and *Eugene Burlingame* for respondents, presented the following points and authorities in addition to those cited in the case of the *People ex rel Sherwood* v. *State Board of Canvassers* (*ante*, page 360). The state board of canvassers has no such certified statement from Dutchess county before it as the law calls for. (Election Code, §§ 272, 284, 285, 289, 290, 291, 292, 297, 298, 299; §§ 3, 6, 8, 9, 18, 19, 20, 23, 24, 25, 26, 31, 32, 33, tit. 5, chap. 130, Laws of 1842; chap. 240, Laws of 1847; §§ 31, 34, chap. 262, Laws of 1890; §§ 16, 17, chap. 296, Laws of 1891; Penal Code, §§ 115, 154, 155; *Hall* v. *People*, 90 N. Y. 498.) There are no legal returns before the state board from the county of Dutchess. Until they shall come, pursuant to the command of the court, the state canvassers cannot canvas the votes for senator cast in Dutchess county. (Election Code, §§ 265, 269, 270, 271, 272, 283, 284, 285, 289, 297, 298; *In re Noyes*, 126 N. Y. 392.) Mr. Deane the candidate who is claimed by us to have been elected, having died since the election, the court was properly moved by private citizens to issue its writ. (*People ex rel. Walter* v. *Supervisors*, 56 N. Y. 249; *Boltzer* v. *Daley*, 37 Hun, 461; *Wright* v. *Common Council*, 16 Abb. [N. C.] 96; *Hall* v. *Supervisors*, 13 id. 421; *Garbut* v. *Rochester, etc., R. Co.*, 14 Hun, 371.) The return in this case is fatally defective. (§§ 3, 9, 19, 23, tit. 5, chap. 130, Laws of 1842.)

PECKHAM, J.   We are of the opinion that the relators had a sufficient interest in the matter before us to make the applica-

454    People ex rel. Daley et al. *v.* Rice et al.    [Dec.,

Opinion of the Court, per Peckham, J.

tion (Mr. Deane himself being dead), if it had been made to the General Term as the proper tribunal. It is a matter in which the public has an interest, quite as great, perhaps, as the individual, and in such event any citizen has the right to invoke the aid of the court to compel the performance by a public officer of a public duty. It is alleged in the moving papers in this case that the paper on file in the secretary of state's office, purporting to be a certificate of the county canvassers of the county of Dutchess, of the result of the election for senator in that county, is erroneous, defective and invalid.

Several grounds are alleged in proof of such statement. The first is the certificate is not signed or certified to by the county clerk of Dutchess county acting as the secretary of the board of county convassers, nor was it certified and transmitted by such county clerk by mail to the governor, the secretary of state or to the comptroller, any or either of them.

Hence the relators claim the paper was not a valid statement, certified to as required by law, and sent to the officers above named, and that the board of state canvassers on that ground had no authority to canvass the paper. But other allegations are made in the papers attacking the correctness of the return. In the relators' papers it is alleged that the board of county canvassers threw out votes that had been counted for Mr. Deane for senator by the inspectors of election, and that they had also transposed votes canvassed by such inspectors, so that the votes counted by inspectors for Mr. Deane were given to Mr. Osborn, and those counted for Mr. Osborn were given to Mr. Deane, and as a result of their improper and illegal acts it was charged that they had enlarged the plurality for Mr. Osborn from ninety-two, which appeared upon the face and as a result of the certificates of the inspectors of election from all the county, to one hundred and ninety-four, and such result would elect Mr. Osborn senator by fourteen plurality, instead of Mr. Deane.

In regard to the first objection to the certificate on file with the secretary of state, I do not think it valid. The county

clerk, acting as secretary to the board of county canvassers, of which board he is not a member, assumed to sit in judgment upon the action of that body. His duty is purely ministerial. If the statement correctly sets forth the action of the board, such statement is to be certified as correct and attested by the chairman and secretary of the board, and a copy thus certified and attached is to be delivered to the county clerk to be recorded in his office. It is wholly immaterial to the secretary whether the board has done its duty in a valid way or not. The board takes that responsibility, and the secretary is simply to attest the action which the board has in fact taken. In this case it is alleged by the relators that the board threw out votes it ought not to have thrown out, and counted votes it had no right to count, and hence the county clerk was justified in his refusal to certify. This is a great mistake. The statute does not call for the views of the county clerk, acting as secretary of the board, as to the validity or invalidity of its action. The statements which the board actually makes, it is the duty of the secretary to attest, and the law casts upon him neither the obligation nor the responsibility of seeing that the board has discharged its duty in a manner consistent with his views of the law.

The question arises as to what course may be validly taken in case a secretary of the board refuses to perform his duty. Is the only remedy by mandamus to compel him so to do? And until he does so sign the statement, can nothing further be done in the way of completing the canvass in the county where such secretary resides?

In a word, does the secretary *ex officio* control the situation, and has he the power to prevent the further execution of the election scheme as provided by law? Suppose he and his deputy both absent themselves from the meetings of the board, is the board powerless to proceed, or having proceeded as far as counting the votes and writing out the statements, are they then stricken with paralysis, which nothing can cure but the appearance or the signature of one or the other of these officials?

I have no doubt as to the answer to be given each of these questions.

The remedy is not confined to mandamus to compel the secretary to sign. If his signature be absolutely necessary, his refusal to sign, and a temporary absence from the state so that process could not be served upon him, would paralyze the whole election machinery from that time. Upon the contention of the relators, such an outcome is by no means fanciful. The secretary assumes a supervision over the action of the board of canvassers, and if in any respect it be in his opinion illegal or improper, he refuses to attest the statement of the result of such action, and in order to be entirely safe, absents himself from the office, or goes where he cannot be found, or steps into another state, and the result would be that nothing further could be done. I am quite clear nothing of this kind results from the wording of the statute providing that the county clerk shall act as secretary of the board and that the statements shall be certified as correct and attested by the chairman and secretary and a copy thus certified and attested shall be delivered to the county clerk to be recorded. The statute, so far as concerns this part, must be complied with as far as it can be under the facts. If the county clerk do not appear, and if his deputy be also absent, I have no doubt of the power of the board to appoint a secretary in their place to perform the duties which appertain to that office. And if the secretary appear, but refuse to perform his legal duty as secretary (a mere clerk of the body for which he is appointed), I think the body has power to designate one of its own members as a proper officer to attest, under its direction, the correctness of the statements it has caused to be made. It is for purposes of identification that these signatures are required. The object is to secure incontestible evidence that the paper to be acted upon officially by any public body thereafter is the paper, or a true copy of the paper, which was actually before the board, and that it truly embodies the result of the action of such board.

Ordinarily this purpose is accomplished by the signature of

the chairman and of the secretary, *ex officio*, but if the latter unlawfully refuse to certify, the certificate may be made by the secretary appointed by the board, *pro tem.* The unlawful refusal stands as an abdication of the functions of secretary, the result of which should not be the necessary resort to the dilatory process of mandamus to compel the performance of a simple ministerial, yet at the same time public and important duty. The delays incident to legal proceedings might rob the remedy of all possible efficiency and thereby cause a failure of justice. Even a summary removal of the incumbent would have to be preceded by service of some kind of notice upon him giving him an opportunity to be heard, and if his whereabouts were unknown the same could not be made.

An immediate appointment of one of its own body to attest the correctness should be regarded as within the power of the board and the attestation of such a secretary should be regarded as sufficient because the best that could under the circumstances be done. In such cases the power to appoint exists as an inherent power of the board to canvass and certify its work. To be effective the statute would have to use explicit language taking such power away.

The same reasoning applies to the subsequent steps.

The secretary appointed by the board attested the statements together with the chairman, and sent one each to the secretary of state, the comptroller and the governor. A further statement certified by the chairman was delivered to the county clerk to be by him recorded as commanded by statute. This statement was not certified by the secretary *pro tem.*, but it was attested by the chairman and delivered by the secretary *pro tem.* to the county clerk. It was the duty of the latter as we have seen to attest and certify to it, and if he did not, this might defer the right to demand its record in his office until it was certified or attested by the secretary *pro tem.*

The statute makes it the duty of the county clerk within five days of the adjournment of the board of county canvassers to deposit in the nearest post-office, directed to the governor, the secretary of state and the comptroller, each, one of the certified

copies of the statement and certificate of votes prepared by him. It is further made the duty of the secretary of state to file in his office the certified statements received by him from a county clerk and to obtain from the governor and comptroller every such certified statement. It is the duty of the secretary of state to send for this certified statement if it have not been forwarded within the time prescribed by statute, and the county clerk is directed to deliver such statement to the messenger on demand. The secretary of state sent such a messenger to the clerk of Dutchess county and demanded a ·return but it was refused or at any rate not delivered. The state board is directed by the statute to proceed to make a statement and canvass the result upon the certified copies of the statements made by the board of county canvassers.

Thus the whole scheme of the statute clearly shows that it was enacted so as to secure before the board of state canvassers the physical presence of accurate copies of the papers which were in truth acted on by the boards of county canvassers, and to this end is directed all the machinery of certificates and attestations by chairmen, secretaries and county clerks, and the forwarding of duplicate certified statements to the state officers named in the statute. If these various attesting officers do their duty as provided for by law, doubtless their certificates and signatures are the only proper evidence of the verity of the papers they certify to.

The question in this case is whether the refusal of the county clerk to sign as secretary of the board of county canvassers, and his refusal to send to the state officers properly-certified statements as required by law, shall prevent the state board from making any canvass. Upon the refusal of the county clerk, the proper statements, attested as stated, were sent by the secretary *pro tem.*, to the state officials. It is substantially conceded that this statement in the office of the secretary of state is one that was certified by the chairman and secretary *pro tem.*, and that it truly embodies the action of the board of canvassers, but it is further urged that inasmuch as the county clerk has not sent the return to the secretary of state at Albany as

county clerk, no action can be taken upon it, and no canvass can be made. This is as we think, an erroneous view. When these officials refuse to perform their duty, they cannot thereby prevent the further proceeding towards a completion of the canvass. This is a question where time is of the utmost importance, and any delay which might last for thirty days, might have the most disastrous result upon the whole administration of the state government, and might even work a change in the result of a national election. In truth, it might actually paralyze the state government, or it might change the personnel of every State office. The county clerks have by law until the last day of November in which to send their certified statements. If not then received, the secretary of state sends for them. If then refused, and legal proceedings alone can be resorted to, delays naturally occurring and lasting for thirty days bring the time to the commencement of the new year, and the canvass may perhaps have gone on without the particular statement and an entirely different result secured than otherwise would have been. Or if the canvassers are to await the arrival of all the returns, their own term of office may expire by the first of the year, and their successors be unable to take possession or do an official act without a certificate or at least without questions and complications that ought not to exist. The real statements or the actual and honest copies thereof sent to the state officers are the important thing to be considered, and when these ministerial officials refuse the performance of their duties, the next best way to authenticate and prove the truth and genuineness of the statements can in our judgment be taken, and in this case, we think that, under all the facts, the steps taken to certify and authenticate the statements were valid, and the proceedings by which they were sent to and received by the secretary of state and the other state officers were sufficient to entitle them to be filed and considered by the board of state canvassers as the properly-certified result of the canvass of the board of county canvassers.

The other ground for directing the state canvassers to omit to canvass this return remains to be considered.

The papers in substance allege that the board of county canvassers illegally canvassed the result of the returns from the inspectors of election in the whole county, and made up its own canvass in opposition to such returns, and as a result, gave ninety-two more plurality to Osborn than by the returns of the inspectors he was entitled to, and resulting in an apparent plurality of 14 votes in the senatorial district in favor of Mr. Osborn. These allegations are nowhere denied in the papers used in opposition to the application for a mandamus. Mr. Mylod simply gives a history of the events as to the refusal of the secretary to sign and what then took place. The statement of the canvass as actually made is attached to the papers in opposition, but there is no explanation or contradiction as to the manner of arriving at the actual result, as alleged in the moving papers. The whole case stands on that return as a legal and valid one. Treating the paper on file in the office of the secretary of state in the same way as if it were certified by the county clerk and sent from his office and duly received and filed in the office of the secretary of state, the question presents itself as to the proper course in such case.

We would then have a return which was on its face proper and valid, but in regard to which allegations were made that it was the result of an illegal action on the part of the county canvassing board by which that board departed from its appropriate sphere as a ministerial body and in excess of its jurisdiction proceeded to make an invalid canvass, and the return on file embodied the result of such illegal canvass. Upon these facts standing uncontradicted, we think the court below in its proper branch would have the power to command the state canvassers to canvass without regard to such a return. As it contained the result of an illegal and erroneous canvass by the board of county canvassers in excess of its jurisdiction, and which thereby would alter the result of an election, the court should not permit it to be canvassed. As to the allegations of the manner of the making of the return by the county board, the state board could not itself inquire into them.

If another return should be duly sent to the board properly

authenticated and containing the result of the legal action of the board of county canvassers, the state board could canvass it.

We think, as a result, that the order for the writ and the writ itself should be modified by striking out the provisions requiring a return to be certified by, and to come from the county clerk of Dutchess county and issued under his seal, and as so modified the order is affirmed.

All concur.

Ordered accordingly.