PEOPLE *ex rel.* BLODGETT *v.* BOARD OF TOWN CANVASSERS OF COEYMANS.

PEOPLE *ex rel.* VAN DERZEE *v.* SICKLER, Town Clerk.

(*Supreme Court, Special Term, Albany County.* May 2, 1892.)

TOWNSHIP ELECTIONS—POWER OF INSPECTORS TO RECOUNT BALLOTS.

 The ballot reform law having omitted to provide for the disposition of used ballots, Laws 1842, c. 130, tit. 4, § 14, providing that such ballots shall be destroyed, remains in force; therefore the court cannot compel the town clerk to return ballots to the inspectors of election for a recount, though fraud or mistake is manifest.

Applications for *mandamus* by Richard S. Blodgett against the board of town canvassers of Coeymans, and by Alton Van Derzee against George W. Sickler, town clerk. First application granted; second, denied.

*Eugene Burlingame,* for relator Richard S. Blodgett. *Lewis Cass,* for relator Alton Van Derzee.

HERRICK, J. The first-entitled matter is an application to the court for a *mandamus* directed to the board of town canvassers of the town of Coeymans, directing them to canvass the statement or returns of the inspectors of election in the second election district of the town of Coeymans, being a statement of the result of the recent town election in that election district. The second matter is an application for an order directing the town clerk of Coeymans to return to the inspectors of election of the second election district thereof the used ballots, stubs, and statement of the result heretofore filed with such town clerk, in order that the inspectors may recount them and file a correct and true return; and it is asked that the first proceeding be held in abeyance until the hearing and determination of the second. While the request that the first proceeding be held in abeyance until the determination of the second is a perfectly proper one, and one that might well be granted in order that the board of canvassers might not be compelled to canvass a return which, while regular and proper upon its face, is in fact false and fraudulent, and while an effort is being made to have a true and correct return made out and placed before them, still the conclusion at which I have arrived makes it unnecessary to suspend proceedings in the first application herein. The return which it is asked to have canvassed, and which the inspectors ask to have returned to them, together with the used or voted ballots, and the stubs, sets forth that 222 votes were cast for the office of supervisor in the second election district of the town of Coeymans. That return is challenged as incorrect, because, as is alleged, 218 votes only were in fact cast for the office of supervisor. To establish that allegation there is produced, in addition to the affidavit of one of the inspectors of election, a copy of the poll list, from which it appears that 223 sets of ballots were issued in that district on election day. There were two sets of tickets in use,—one a ticket including the names of all candidates for town offices; another, what is known as the excise ticket; and it is alleged by the inspectors, whose affidavit is produced, that, out of the 223 sets of ballots that were issued, one person did not vote for the office of supervisor, and of the other sets of tickets issued four were not voted, but returned as spoiled ballots, the persons to whom they were issued having been challenged, and not allowed to vote, thus reducing the number of ballots voted to 218. The poll list corroborates this statement. It shows that 223 sets of ballots were issued. It shows that four sets of ballots that were issued were returned as spoiled, and that the persons to whom they were issued did not vote, which would reduce the number of ballots cast to 219. In addition to this positive evidence, there is the negative evidence contained in an answering affidavit made by one of the inspectors of election in opposition to this motion for a return of the ballots to the inspectors that they may be recounted. That answering affidavit utterly and entirely fails to make any answer to the allegations in the moving papers that in truth and fact only 218 bal-

lots were cast for the office of supervisor. Neither does he explain or attempt to explain the apparent difference between the poll list and the statement of the result filed by the inspectors of election. He does not even swear that the returns are true, but simply that they are proper and correct in form, which is not disputed. That affidavit reads as follows: "Philip Ostrander, being duly sworn, says he acted as and was one of the inspectors of election in and for the second election district of the town of Coeymans, Albany county, at the town election held therein on the 12th day of April, A. D. 1892; that deponent, with the other inspectors in said district, canvassed the votes cast at said election in said district, and made statements and return thereof, which were duly filed in the town clerk's office of said town; that deponent has since examined the returns on file in said clerk's office from the four districts of said town for said election, and finds them proper and correct in form, and that Richard S. Blodgett has a plurality of one for the office of supervisor of said town, as appears from the face of said returns;" subscribed and sworn to, etc. The singularly careful way in which the affiant refrains from contradicting or explaining any of the material allegations in the affidavit of his brother inspector is strong corroborative evidence, although of a negative character, of the matters set forth in the moving papers. It is practically admitted that of the 223 sets of ballots issued 4 sets were not voted, but were returned as spoiled, the parties to whom they were issued having been challenged; and it is not denied but one of the ballots voted had the name of the candidate for supervisor scratched from it, thus reducing the vote for supervisor to 218; that is the number of ballots that should have been in the box for the office of supervisor at the close of the polls, yet the statement filed says 222 were counted. While it is evident to my mind that a mistake has been made, or a fraud perpetrated, I do not undertake to say which, yet I do not know of any law authorizing me to direct the return of the ballots to the inspectors in order that they make a recount, or, as is asked in the alternative, to direct the ballots to be brought into court, in order that they may be recounted, and a correct determination of the result arrived at. While there are cases in which the court has the power to direct a board of inspectors to reconvene and correct a canvass, to canvass votes that they have refused to canvass, or to refrain from canvassing votes that they have already erroneously canvassed and counted, yet I know of no case where the court has directed the restoration of the ballots to them, and a recount of the ballots thus restored. In fact, to do so is to connive at a violation of the law, because the town clerk has no right to have the used ballots in his possession; the law presumes that they are no longer in existence. The ballot reform act, so called, is silent as to what shall be done with used or voted ballots; and when it is silent we must resort to the election laws in existence prior to its passage, when such prior laws are not inconsistent therewith. Chapter 130, tit. 4, § 47, Laws 1842, reads as follows: "The remaining ballots not so pasted or attached shall be destroyed, and the board of inspectors shall be dissolved." See Election Code, p. 98; Birdseye's St. p. 937, § 86. I cannot find that this law has ever been repealed, and I do not see how I can command the return of ballots to be recounted when the law requires their destruction and presumes that they have been destroyed. Must, then, the board of town canvassers canvass and count a certificate that is apparently founded upon a mistake or fraud?

Boards of inspectors of elections and canvassers have no power conferred upon them to correct frauds or rectify mistakes, except clerical ones. Their duty is simply to count, in one case, the ballots actually found in the ballot box at the close of the polls, and, in the case of canvassers, to add together the statements of results filed with them by the inspectors. The remedy for frauds and mistakes, other than clerical, is by proper proceedings in court or before the board or body to membership in which the person aggrieved is a

candidate, where that board or body has the power conferred upon it to determine the qualification and election of its own members. The board of supervisors has such power, and the error that has been committed here, if any, can be rectified by that board. While it is repugnant to one's sense of justice to compel the board of canvassers to canvass and count a return founded upon a mistake or a fraud, yet to refuse to do so opens the door to great possibilities of evil; to permit them to refuse to canvass because of mistake or fraud in the making out of the statement or return, where it is regular in form, is to permit boards of canvassers to take cognizance of matters outside of the returns; it is to permit them to act as courts to determine the validity of the returns and the honesty of the elections; is to place our whole election system in the hands of boards not organized for such purposes; to make returning boards of them; it would be subversive of our entire scheme of elections. The election officers, from inspectors up to the board of state canvassers, are vested with no power to decide anything; they are simply to receive, and afterwards count what they have received,—the inspectors, the ballots; the board of canvassers, the returns made by the inspectors. If the ballots in form and character comply with the law, and the voter's name appears on the registry, and he takes the prescribed oath, the inspector is bound to take the ballot and count it. If the statement comes from the inspectors of election, and is correct in form, the board of canvassers is bound to receive and canvass it. All questions of fraud or mistake, except clerical ones in the statement, are to be passed upon by the courts or such other tribunals as are designated by statute. The law is careful to impose upon inspectors and canvassers no duty except to receive and count. The power to investigate and determine is carefully withheld from them.

I have said that the remedy for fraud and mistake is by proper proceedings in court. I mean by that the appropriate action to determine who has been elected. This proceeding before me is not for that purpose. In a proceeding of this kind the court can only compel the election officers to do that which it is their duty under the law to do without compulsion. It may advise them what the law is, what they ought to do, and compel them to do it, but it can give them no new or additional power; neither can it act for them. For these reasons the application by relator Van Derzee for a return of the ballots to the inspectors, and for a recount by them, must be denied; and such application being denied, the only return before the board of town canvassers being the one already filed, that is the only one that can be acted upon by them. This being regular in form, and such board of canvassers having no right under the law to take into consideration anything but the statement before them, the application for a *mandamus* directing them to count and canvass the statement from the second election district must be granted, and a *mandamus* must be issued accordingly. Under the circumstances, I do not think I would be justified in granting costs in either matter.