STEARNS, *Mayor, et al.* v. STATE *ex rel.* BIGGERS, *Co. Atty., et al.*

No. 588.     Opinion Filed March 10, 1909.

(100 Pac. 909.)

1. **ELECTIONS—City Elections—Canvassing Votes—Duties of City Council.** The duties of city councils of cities of the first class to canvass the returns made to the city clerk by the precinct election boards and declare the result of an election áre purely ministerial, and they have no power to hear evidence aliunde the returns or to go behind the returns, regular and valid upon their face, for the purpose of determining whether the election officers of a precinct have irregularly and fraudulently canvassed and returned the vote from such precinct.

2. **MANDAMUS—Canvass of Election Returns—Return to Writ—Sufficiency.** In a return to an alternative writ, commanding the members of a city council to show cause why a peremptory writ should not issue commanding them to canvass all the returns of an election held for the purpose of selecting freeholders to prepare and propose a charter, the respondents answered that the votes from one ward had been fraudulently and falsely canvassed and returned by the election board of said ward, so as to change the result of the election, for which reason they refused to canvass the returns from said ward. Held, that a motion to strike said allegations from the return was properly sustained by the trial court.

3. **ELECTIONS—City Election—Proclamation Published on Sunday.** Under the provision of section 354, Wilson's Rev. & Ann. St. 1903, requiring the mayor of a city of the first class to issue a proclamation for every election, general or special, giving at least 10 days' notice thereof, held, that the publication of a proclamation by the mayor calling an election to elect freeholders to prepare and propose a charter made in a Sunday issue of a daily paper of the city more than 10 days before the election is valid and sufficient.

4. **MANDAMUS—To Canvassing Board.** The court may by mandamus require a board of canvassers after it has made one partial canvass and declared the result to reassemble and make a canvass of all the returns if it appears upon the first canvass the board improperly rejected the returns from one of the precincts, and refused to canvass same.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; James R. Tolbert, Judge.*

Action by the State, on the relation of Virgil R. Biggers, County Attorney, and others, for writ of mandamus to Frank P. Stearns, mayor of city of Shawnee, and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

This is an action for mandamus ·brought by defendant in error in the district court of Pottawatomie county against the mayor and members of the city council of the city of Shawnee to compel them to reconvene and canvass the returns from the First ward in the city of Shawnee of the votes cast at an election held in that city on the 5th day of September, 1908, and to consider the returns from said precinct in rendering and declaring the result of the election held on that day for the purpose of ascertaining whether a proposed charter for the city of Shawnee should be adopted. On the 7th day of April, 1908, an election was held in the city of Shawnee for the purpose of ascertaining whether further proceedings toward adopting a charter for said city should be taken and for the election of a board of freeholders to frame the proposed charter. At said election a majority of the votes cast were in favor of proceeding to adopt the charter and a board of freeholders consisting of two members from each ward of the city was elected to prepare and propose the same. The board of freeholders thereupon qualified and did prepare the proposed charter, and filed copies of the same with the mayor of the city of Shawnee and the register of deeds of Pottawatomie county, as provided by law. Thereupon an election was called for and held on the 5th day of September, 1908, for the purpose of determining whether the proposed charter should be adopted by the city. On the 11th·day of September, 1908, the city council met as required by law for the purpose of canvassing the returns of said election, and proceeded to and did canvass the returns from all the wards of the city except the First ward. Upon said partial canvass of the votes the council declared the charter lost. The returns from the First ward showed that in said ward 205 votes were cast for the charter and 37 against it, and that, if the city council in canvassing the re-

turns had considered and canvassed the returns from said ward, there would have been a majority of 32 votes for the adoption of the charter. The facts here stated are in substance as alleged in the petition and amended writ.

Respondents in their return to the writ demurred and moved to quash the same upon several grounds which are unnecessary to be stated here for the reason they are not insisted upon in this court. Further answering, they admit that they refused to canvass the returns from the First ward, and allege they did so for the reason that the same had been falsely and fraudulently made by the election board of said ward; that two of the members of the election board of said ward corruptly conspired together to deprive the electors thereof of their franchise and to prevent a free expression upon the question submitted at the election, and that said two persons in furtherance of their conspiracy handled the ballots when the same were canvassed and miscalled the same; that one of said persons in reading the ballots called 205 ballots for the adoption of the charter and 37 against the adoption, whereas, in fact, there were 116 ballots for the adoption of the charter and 126 against, and that by the false and fraudulent acts of said two election officers the returns from said ward as delivered to defendants were false and did not speak the truth, and that the changes therein resulting from the fraudulent acts of the election officers of said ward would change the result of the election, making it appear that a majority of the votes in the city were in favor of the adoption of the charter, whereas in fact a majority of the votes were against it; that on the day the defendants convened as a canvassing board to canvass the votes cast at said election residents of the city met with the board and filed a protest against canvassing the returns from the First ward, and with their protest submitted 126 affidavits of electors of the First ward, in which each affiant stated that he was an elector in the ward, properly registered, and voted therein at said election, and that he voted against the charter.

Petitioners moved to strike out all that portion of the return

alleging fraud of the election officers of the first ward in making their return, which motion was sustained by the court, and, upon the hearing of the case upon the petition and return to the alternative writ, a peremptory writ was awarded.

*P. O. Cassidy,* City Atty. *W. M. Engart,* Asst. City Atty., *B. B. Blakeney, J. H. Woods, Fred Reiley, L. G. Pitman,* and *C. P. Holt,* for plaintiffs in error.

*W. S. Pendleton, H. H. Smith, M. L. McKenzie, W. T. Williams,* and *Edw. Howell,* for defendants in error.—The court had no right, on application for mandamus, to go behind the election returns, under facts of the case at bar: *State v. Stevens,* 23 Kan. 325; *Rosenthal v. Board of Canvassers* (Kan.) 32 Pac. 129; *New v. Voege* (Wis.) 71 N. W. 880; *State v. Holmes* (Neb.) 91 N. W. 175; *People ex rel. v. Bell,* 7 N. Y. Supp. 701; *People ex rel. v. Board of Canvassers,* 19 N. Y. Supp. 206; *Cerini v. De Long* (Cal.) 94 Pac. 582. On validity of election notice published on Sunday: *State v. Dougherty,* 58 Am. St. Rep. 41; *Knoxville v. Knoxville Water Co.* (Tenn.) 61 L. R. A. 888; Wilson's Rev. & Ann. St. §§ 1963, 1969.

HAYES, J. (after stating the facts as above). The two propositions upon which plaintiffs in error insist that the judgment of the trial court should be reversed are (1) that the writ of mandamus is a discretionary one, and the court should not in its discretion compel a canvassing board to canvass returns which had been fraudulently made; and (2) that no notice as required by law was given of the election at which the freeholders were elected to prepare and propose the charter.

The proceedings in this case looking to the framing, proposing, and adopting the charter were had under the provisions of section 3, art. 18, Const. (Bunn's Ed. § 413). On May 22, 1908, between the date on which the election was held for the election of the freeholders and the date of the election for the adoption of the charter, an act of the Legislature (Laws 1908, p. 190, c. 12, art. 4) entitled "An act to enable all cities containing a population of more than two

thousand inhabitants to frame and adopt charters for their own government, and to extend and define their powers," was approved by the Governor; but the provisions of this act in so far as they affect the proceedings for framing, proposing and adopting charters by municipal corporations are in the exact language of section 3 of article 18 of the Constitution, except one difference which is immaterial in the consideration of this case. By the provisions of this section of the Constitution an election of a board of freeholders may be called at any time by the legislative authority of the city, and shall be called by the chief executive of any city within 10 days after there shall have been filed with him a petition demanding the same for the purpose of determining whether further proceedings shall be had for the purpose of adopting a charter for the city, and for the purpose of electing a board of freeholders to prepare and propose a charter. The charter prepared and proposed by the board of freeholders may at any general or special election to be held within 30 days, and not earlier than 20 days, after the publication of the charter as is provided by the Constitution, be adopted or rejected. This provision of the Constitution was before this court for construction in *State v. Scales,* 21 Okla. 683, 97 Pac. 584, in which opinion it was held self-executing and that the legislative authority of the city may submit, as provided by said section, a charter for adoption or rejection at any general or special election.

The returns of an election, general or special, in cities of the first class, must be made to the city clerk, and by him presented to the city council, who constitute the board of canvassers, and whose duty it is on the first Friday after each election to canvass the vote as returned to the city clerk, and to spread the same upon the journal, together with the result, and to declare the result of such election. Sections 351, 354, Wilson's Rev. & Ann. St. 1903. The duty of the city council to canvass the returns as made to them by the election boards of the different precincts in the city is purely ministerial. Sitting as a canvassing board, they are without any judicial discretion in the matter. Their

sole duty and power consists in tabulating and casting up the vote as shown by the returns made to them and declaring the result thereon. Section 351, Wilson's Rev. & Ann. St. 1903; Section 261, McCreary on Elections. Plaintiffs in error refused to canvass the returns from the First ward of the city because of the alleged fraud and irregularities of the election board of that precinct in canvassing the vote and making the return thereof. Such irregularity and fraud did not appear upon the face of the returns, nor was there any irregularity in the returns themselves, appearing from the contents thereof, and upon their face they were regular in form and valid. The alleged fraud of the election officers of the First ward which plaintiffs in error allege excuses them from the performance of their duty was made known to the board by the protest of some of the citizens of the city against the canvassing of the vote from that precinct, which protest was supported by affidavits of various voters living in said precinct filed with the election board. To determine whether the votes of that precinct had been falsely and fraudulently counted and returned, as charged, would have required a hearing and an adjudication of that question. Such acts would have constituted a judicial proceeding which the canvassing board has no power to undertake. *Attorney General v. Board of County Canvassers*, 64 Mich. 607, 31 N. W. 539; *Hagge v. State, etc.*, 10 Neb. 51, 4 N. W. 375; *State v. Stearns*, 11 Neb. 104, 7 N. W. 743; *State v. Board of State Canvassers*, 36 Wis. 498; *State v. Mason*, 44 La. Ann. 1065, 11 South. 711; *Maxwell v. Tolly*, 26 S. C. 77, 1 S. E. 160; *State v. Board of Sup'rs of Coahoma County* (Miss.) 3 South. 143; *Lehman v. Pettingell*, 39 Colo. 258, 89 Pac. 48; *State v. Steers*, 44 Mo. 223.

In the last case cited the court said:

"To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure is to infringe or destroy the rights of parties without notice or opportunity to be heard—a thing

which the law abhors and prohibits. Admit the power, and there will be no uniformity. One canvassing officer will reject for one thing, and another for a different matter; and no man can tell whether he is legally elected to an office until he consults the notions of a canvasser. The exercise of such a power is subversive of the rights of the citizen, and dangerous and fatal to the elective franchise."

And in *People ex rel. Blodgett v. Board of Canvassers* (Sup.) 19 N. Y. Supp. 206, it was said:

"While it is repugnant to one's sense of justice to compel the board of canvassers to canvass and count a return founded upon a mistake or fraud, yet to refuse to do so opens the door to great possibilities of evil. To permit them to refuse to canvass because of mistake or fraud in the making out of the statements of the returns, where it is regular in form, is to permit board of canvassers to take cognizance of matters outside of the returns, is to permit them to act as canvassers to determine the validity of the return and the honesty of the election, is to place our whole election system in the hands of boards not organized for such purposes."

Other authorities in harmony with the foregoing are numerous, and canvassers are uniformly held to be ministerial officers unless by statute some judicial or quasi judicial function is conferred upon them, which is seldom done. This doctrine supported by the authorities generally is a sound and salutary doctrine, conducive to obtaining and ascertaining an expression of the will of the people by means of the elective franchise. To permit canvassing boards who are generally without training in the law and who are frequently without general business experience to look elsewhere than to the returns for a reason or excuse to refuse to canvass the same and adjudicate and determine questions that may be presented *aliunde,* often involving close legal questions, would afford temptation and great opportunity for the commission of fraud. In close elections the boards swayed by local prejudice or interest could easily find some excuse or have supplied to them some excuse to refuse to canvass the returns, and the means of the people to have the vote canvassed and the result of the election declared would be destroyed. If alleged frauds in conduct-

ing and holding an election and making returns thereof to the extent of improperly counting 89 votes furnishes to a canvassing board an excuse to refuse to canvass the returns, it may refuse to do so when an allegation of one fraudulent vote is made, and in general elections each county canvassing board of the state might thus be turned into a contesting court, and the entire election machinery would become blocked and useless for the purpose for which it was created. It is the general policy of the law to place the jurisdiction of questions affecting the validity and regularity of elections in the courts, who are farther removed from prejudices and excitement that often attend elections, and are more competent to hear, determine and adjudicate such questions.

That mandamus will lie to compel a ministerial officer to discharge a duty or to compel other officers to perform a duty purely ministerial is too well settled to require discussion or the citation of authorities, but he who seeks the writ must establish three prerequisites. He must show (1) a legal right to have the act done which he seeks to coerce the respondent to do; (2) that it is a plain legal duty of respondent to do that which petitioner seeks to have done, and that respondent is without discretion to perform or refuse to perform such duty; (3) that the writ will afford him an availing remedy, and that he has no other plain speedy adequate remedy. Spelling's Extraordinary Relief, par 1369.

Plaintiffs in error contend that, notwithstanding they, acting as a canvassing board, were performing a ministerial duty, and that they were without power to take cognizance of any fraudulent acts or irregularities of the election officers of the First ward that did not appear upon the face of the returns, yet that such matters are competent to be alleged in the return to the alternative writ to show that petitioner is without legal right to the writ, and that, the writ being discretionary, the court erred in granting it. This contention presents the question whether it is competent to allege in the return to an alternative writ, and thereby present to the court upon the hearing, matters that could not be considered by the canvassing board; that is, whether it was compe-

tent for the trial court at the hearing on the alternative writ
and the return thereto to inquire into and investigate the alleged
frauds of the election' officers of said First ward. In the presen-
tation of this case counsel for plaintiffs in error have relied with
emphasis upon the following cases as being in point and as sup-
porting their contention: *State v. Marston,* 6 Kan. 524; *State
v. Stevens,* 23 Kan. 456; *People v. State Board of Canvassers,*
129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646.

*State v. Stevens* was an action for mandamus to compel a
county canvassing board to canvass the returns and declare the
result of an election for the removal of a county seat in a sparse-
ly settled frontier county of the state of Kansas. The defendants
in their return to the alternative writ answered that there were
only 800 legal voters in the county at the date of the election,
and that by the returns 2,947 votes purported to have been polled;
that at least 2,147 of such votes were illegal and fraudu-
lent; and that it was impossible from such returns to de-
termine and declare the result of the election. Upon a motion
to strike out this portion of the return, the court held that the
returns were so obviously false and fraudulent as to show they
did not express the vote at the election, that they were manu-
factured evidence, and that the court would not compel by man-
damus the board to recognize them as true. This case, if not
technically, is in spirit within the rule that a court will not com-
pel by mandamus a convassing board to canvass returns that are
so irregular and defective upon their face that the vote cannot be
determined therefrom. The court said of the returns in that
case:

"But these returns are manifestly rotten and worthless, and
the truth is not in them. They do not fail of absolute truth
through mere mistake or error. They are an intentional and im-
mense lie. They are without value in any proceeding or in any
court as evidence of votes cast. * * *"

These facts appeared not from evidence *aliunde,* but upon
the face of the returns, and from common knowledge. No such
condition exists as to the returns in the case at bar. Upon their

face they are regular and appear to speak the truth. If they are false, such fact will have to be established by evidence. Their falsity is not obvious nor a matter of common knowledge.

*State v. Marston, supra,* is based upon facts very similar to the facts in *State v. Stevens, supra,* and for the same reason is not applicable.

*State v. State Board of Canvassers, supra,* was an action to compel by mandamus a canvassing board to issue and deliver a certificate of election to a person who had received as a candidate for office a majority of the votes cast at the election. At the trial of the case it was admitted that the petitioner was unqualified under the Constitution of New York to hold said office, and the court refused the peremptory writ.

Mr. Merrill in his work on Mandamus (paragraph 180), after stating the general rule that no evidence will be received on the return to an alternative writ of mandamus against a canvassing board that the canvassers themselves could not receive and hear, refers to this case, and states that the doctrine therein announced is in harmony with the general rule, because the facts therein were undisputed; but it is unnecessary for us to discuss the doctrine of this case for the difference in the facts upon which it was presented in our opinion makes it inapplicable to the present case, and the same may be said of *People ex rel, Daley v. Rice,* 129 N. Y. 449, 29 N. E. 355, 14 L. R. A. 643. In each of those cases the court proceeds to its conclusion upon the theory that the facts as admitted show that petitioners have no legal right to the writ, or that it will be an unavailing, useless remedy. In the case at bar it cannot be said that petitioner has no legal right to the writ for the reason that the undisputed facts disclose that there were frauds committed by the election officers of the First ward which changed the result of the election, for the reason that, when this issue of fact was presented by respondents in their return, petitioner objected thereto, and moved to strike it out for the reason that it was incompetent, immaterial, redundant, and irrelevant, which motion the court sustained. In order to ascer-

tain whether this action of the court was correct, we may antici-
pate what might have been the result in the proceeding if the
motion had been overruled. Respondents' return, then, would
have presented as a defense the alleged frauds of the election of-
ficers, which under our statute (section 4891, Wilson's Rev. &
Ann. St. 1903) would not have concluded plaintiff, but he could
have countervailed it by proof in direct denial. If he had done
so, then a proceeding to compel by mandamus the performance
of a plain ministerial duty by the canvassing board would have
been converted into an election contest to determine the result of
the election—a purpose entirely foreign to the functions of the
writ in this character of proceeding. If respondents may urge
as a defense for their refusal to discharge their plain ministerial
duty to canvass the returns fraudulent acts of the election board
in making the returns of election from the precinct, there is no
reason why a canvassing board may not urge illegal voting and
other irregularities in the holding and conducting of elections as
a ground for the refusal to perform their duty at not only this
election, but at other elections at which county or state officers
may be elected, which upon denial by the petitioner and the in-
troduction of proof to controvert the same would resolve such pro-
ceeding into a suit to try title to office—a use of the writ which
all the authorities refuse to sanction.

This action is brought by the state on relation of the county
attorney of Pottawatomie county. The people of the state are
the petitioners and real parties in interest, and they seek by this
action to compel a set of their officers to perform a ministerial
duty which the statute imposes and gives them the right to have
performed. These officers seek to avoid the performance of such
duty by alleging in their return to the writ that other officers
have improperly discharged their duty, and ask the court to con-
sider same as their defense for failure to discharge respondent's
admitted duty.

*McQuade v. Furgason et al.*, 91 Mich. 438, 51 N. W. 1073,
is a case in which the facts and proceedings are very similar to

those in the case at bar.  Respondents in their return attempted
to excuse their action by making charges of fraud of the precinct
officers, but the court said:

"If the statements made in the answers of the respond-
ents and the affidavits accompanying them are true, the election
law of this state was most grossly violated.  But the return by a
majority of the board was made, and it is the settled law of this
state that canvassing boards are bound by the return, and cannot
go behind it, especially for the purpose of determining frauds in
the election.  Their duties are purely ministerial and clerical.
They must be governed by the return.  *Coll v. Board,* 83 Mich.
367, 47 N. W. 227; *Roemer v. Board,* 90 Mich. 27, 51 N. W. 267.
These affidavits are *ex parte,* and cannot be considered upon this
hearing.  Such grave charges must be investigated in the due
course of the proper legal proceedings.  The law furnishes ample
remedy, both civil and criminal, for the correction and punish-
ment of election frauds."

See, also, *State v. Marshall County Judge,* 7 Iowa, 186.  To
hold that the trial court erred in sustaining the motion to strike
out of respondents' return the allegations charging fraud and
irregularity of the precinct election officers in making the returns
from the First ward would drive us to one of two conclusions, to
wit:  That the judgment of the trial court should be reversed and
the peremptory writ denied, which is the judgment for which
plaintiff in error contends, or that the case should be reversed for
such error and remanded to give the petitioners upon the trial
an opportunity to disprove the allegations of fraud in the return.
The former conclusion would be unwarranted under the statute,
which gives to the petitioner in a mandamus proceeding the right
to avail himself of any valid objection to the sufficiency of the re-
turn or to disprove in direct denial all matters alleged therein,
After the court sustained the motion to strike, the issue of fraud
and misconduct of the election officers was no longer in the case.
On the other hand, to adopt the second conclusion suggested
would be to convert this action into a contest to adjudicate said
questions of fraud and irregular practice in the holding of the

election and to determine the results of such election which is unauthorized in this kind of a proceeding.

It is urged that there exists no statutory provision for contest of the election held, and that, if respondents are compelled to canvass the returns from the First ward and declare the result upon all the returns, it must be declared that the proposed charter has been adopted; that such result would be obtained by fraud of the election officers in said precinct, and great wrong will be done for which there is no remedy afforded. No statutory provision exists in this state for contesting elections of this kind. Provision has been made by the Legislature for contests in county seat elections and in elections of county and state officers, but provision for contesting elections of the character of the one in the case at bar has not yet received the attention of the Legislature. If no other remedy exists by which it may be ascertained whether frauds were committed in the holding of this election, the legislative department of the state should be appealed to to provide such a remedy. It has been suggested that the district courts of the state in a proper action in equity would have the power to determine the validity of the election and all questions of fraud and irregularity in the holding of the same and to set aside the election or to ascertain the true results of the same, but this question we do not now decide, for the reason that we do not regard it necessary to a decision of this case, and for the further reason that we have been urged to render a speedy decision in order that the people may be informed of the result thereof, and may prepare for the annual election to be held in cities of the first class during the month of April, 1909, and such question can best be decided in a suit brought directly for that purpose if any such suit is brought.

The election at which the freeholders to prepare and propose the charter were chosen was held on the first Tuesday in April, 1908, the day fixed by statute for holding the regular annual election of that year in all cities of the first class for the election of city officers. The proclamation of the mayor calling the election

for selecting the freeholders and to ascertain whether the city would proceed further toward the proposed charter was published on Sunday, March 15, 1908, in the Shawnee Herald, a daily newspaper published in the city, and said publication was the only publication ever made. It is urged that, since Sunday is a non-judicial day, this publication was void, and that no notice of the election was given as by law required, and that all subsequent proceedings in connection with the preparing and proposing of said charter were unauthorized and void. No contention is made that, on account of the publication having been made on Sunday, the voters of the city were uninformed of the election or misled relative thereto, or that the result would have been different or in doubt if the publication had been made on a different day. The evidence shows the contrary. The total number of votes cast at said election for city officers was, 1,074. One thousand forty-seven votes were cast for the freeholders and 1,083 votes were cast upon the question whether the city should proceed further toward preparing and proposing the charter. It thus appears that more votes were cast upon the special question proposed than for the officers elected at the regular annual election, and it is not charged that the vote cast at the election is an unusually small vote to be cast at such elections in the city of Shawnee.

Section 3, art. 18, Const. (section 414, Bunn's Ed.), provides that elections for the selection of freeholders shall be called by the chief executive officer of the city within 10 days after a petition as provided by said section shall be filed demanding such election, and that the election shall be held not later than 30 days after the call therefor. Section 354 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903 provides that the mayor shall issue a proclamation for every election, annual or special, giving at least ten days notice therefor, naming the place in each ward where same is to be held, and he shall designate in each ward three electors to act as judges and two electors to act as clerks of said election. This section of the statute was applicable to the election held in April, 1908, for the purpose of selecting

the freeholders, and is the only statute requiring notice of the election to be given. It does not specify how the publication of the proclamation or notice shall be made nor how many times it shall occur. The only requirement imposed by the statute is that 10 days' notice shall be given, naming the place in each ward where the election is to be held. Since no objection has been made to the contents, form, or sufficiency of the notice given, but only to the date on which it was published, we shall discuss only the legal effect of the publication of the proclamation on Sunday. Waiving the question whether respondents can, in this action, raise questions of irregularity in the calling of the election for the selection of freeholders when the persons elected have duly qualified and discharged the duties of their offices, and have been recognized as such officers by the municipal authorities of the city and by the people in acting upon the charter prepared and proposed by them to the extent of calling and holding an election to ascertain whether the same shall be adopted, we think the contention that the publication of the proclamation was void is without merit. At common law only judicial proceedings on Sunday were prohibited. A person was not prohibited from making contracts or doing labor on that day, but Sunday was regarded *dies non juridicus.* 27 Am. & Eng. Ency. 389. The rule at common law has been changed in practically all of the states of the Union by statute so as to prohibit labor and the making of contracts on Sunday, and almost all judicial proceedings are prohibited by statute. The provisions of the statute of this state declaring the acts forbidden to be done on Sunday are contained in sections 1963-1969, Wilson's Rev. & Ann. St. 1903. Section 1969 reads:

"All service of legal process of any description whatever, upon the first day of the week, is prohibited, except in cases of breach of the peace, or apprehended breach of the peace, or when sued out for the apprehension of a person charged with crime, or except where such service shall be specially authorized by law."

Under the comprehensive language of this section prohibiting the service of "process of any description whatever," any publica-

tion in a newspaper which may be regarded as "process" would be void, just as it would be under the rule at common law. *Schwed v. Hartwitz,* 23 Colo. 187, 47 Pac. 295, 58 Am. St. Rep. 221; *Shaw v. Williams,* 87 Ind. 158, 44 Am. Rep. 756; *Sawyer v. Cargile,* 72 Ga. 290. But is a publication of a notice of an election "service of process"? We think not. The word "process" has a general and a restrictive meaning. In its restrictive sense it applies to judicial writs issued in an action. In its general meaning it is synonymous with "proceeding," and embraces the entire proceedings in an action from beginning to end. *Palmer v. Allen,* 5 Day (Conn.) 193; *Hanna v. Russell,* 12 Minn. 80 (Gil. 43); *Rich v. Trimble,* 2 Tyler (Vt.) 349. Neither of these definitions embraces the publication of a proclamation calling an election, for such proclamation or notice of an election constitutes no part of a judicial proceeding or action. It is part of a legislative proceeding whereby the people of a locality under a delegation of authority granted to them by the people of the entire state by means of a provision in the fundamental law of the state may adopt for themselves a form of municipal government.

In *Knoxville v. Knoxville Waterworks Co.,* 107 Tenn. 647, 64 S. W. 1075, 61 L. R. A. 888, it is held that a provision of a city charter requiring the ordinances of a city to be printed or published is complied with by the publication of an ordinance in a regular Sunday issue of a newspaper in the city. The court in that case supports its conclusion with several cases in point. We think that case is in point here. The purpose of having the notice of the election published is to have the time and place of the election and the question submitted brought to the attention of the voters. It is not contended that such purpose was not accomplished by the publication made. Such publication was made more than 10 days before the date of the election, and as there is no provision, statutory or of the common law, prohibiting such publication being made on Sunday, it is sufficient and valid.

No question has been raised in this proceeding as to the power of the court by mandamus to compel a canvassing board that has made a partial canvass of the returns of an election

and declared the results thereon to reconvene and canvass the entire returns. This question has been passed over by counsel without comment, but we think that we should not overlook the same since to sustain the action of the lower court we must in effect hold that the court has such power. There is conflict among the authorities upon this question, but we think the rule of those cases holding that the court has the power to compel the canvassing board by mandamus to reassemble and complete the canvass which they have partially made is the better rule, and that the reasoning by which such rule is supported is sound. Mr. Justice Brewer in *Lewis v. Commissioner,* 16 Kan. 102, 22 Am. Rep. 275, in discussing this proposition, uses the following language:

"The view taken by the Iowa court seems the correct one. It is the duty of the canvassers to canvass all the returns, and they as truly failed to discharge this duty by canvassing only a part and refusing to canvass the others as by refusing to canvass any. And it is settled by abundant authority that, where the board refuses to canvass any of the votes, it may be compelled to do so by mandamus, and this though the board has adjourned *sine die.* *Hagerty v. Arnold,* 13 Kan. 367, is a case in point. The canvass is a ministerial act, and part performance is no more a discharge of the duty enjoined then no performance. And a candidate has as much right to insist upon a canvass of all the returns as he has of any part, and may be prejudiced as much by a partial as by a total failure. The adjournment of a board does not deprive the court of the power to compel it to act, any more than the adjournment of a term of a district court would prevent the court from compelling by mandamus the signing of a bill of exceptions by the judge of the court which had been tendered to him before the adjournment."

Other cases holding this doctrine are *State v. County Judge,* 7 Iowa, 186; *State v. Stearns, supra; State v. McFadden,* 46 Neb. 669, 65 N. W. 800.

Finding no error in the record for which the case should be reversed, the judgment of the lower court is affirmed.

All the Justices concur.