No. 8461.

FRISBIE ET AL., TRUSTEES OF CLARKSVILLE, *v.* FOGG ET AL.

TOWN.—*Constitutional Law.*—The act of June 17th, 1852, amendatory of the charter of Clarksville, as far as it authorizes the new trustees for which it provides, to sue for and receive the funds derived from the sale of lots under the charter of 1783, granted by Virginia, does not impair the obligation of any contract, and is valid.

SAME.—*Mandamus.*—*School Law.*—Mandamus lies by an officer to compel the delivery, by his predecessor, of the records, books and papers of the office, and to compel the payment of money which the officer is required by law to apply to school purposes, the needs of which may require the prompt application of the money.

From the Clark Circuit Court.

*J. H. Stotsenburg*, for appellants.

*A. Dowling*, for appellees.

MORRIS, C.—The appellants, who were the plaintiffs below, allege in their complaint, that they are the trustees of the town of Clarksville, in Clark and Floyd counties, Indiana, duly elected and appointed as such, pursuant to, and in all respects in accordance with, " An act amendatory of the charter of

Clarksville," approved June 17th, 1852. The times and manner of their election and qualification are stated with much particularity, and shown to be in conformity to said amendatory act.

It is then averred that the appellees call themselves the trustees of the town of Clarksville, and that they have in their possession, or subject to their control, the books, papers and other property of said town, and especially a fund belonging to said town, consisting of money which arose from the sale of the lots of said town by the gentlemen, trustees of the same, who were nominated for that purpose by the General Assembly of the State of Virginia in 1783, prior to the cession of the territory northwest of the Ohio river to the United States; that the said fund was to be applied by said gentlemen, trustees, in such manner as they should judge most beneficial to the inhabitants of said town; that such application of said funds had never been made.

That it is provided by the 16th section of the schedule, annexed to the present constitution of the State of Indiana, that "The General Assembly may alter or amend the charter of Clarksville, and make such regulations as may be necessary for carrying into effect the objects contemplated in granting the same; and the funds belonging to said town shall be applied according to the intention of the grantor." That the funds belonging to said town, for said purpose, now in the hands of the appellees, or subject to their control, amount to over twelve thousand dollars, all of which ought of right to be applied in the manner provided for by the act of June 17th, 1852, under which the appellants are acting as trustees; that before the commencement of this suit, and so soon as the board of trustees was organized, the plaintiffs, as such trustees, called upon the appellees, who are the late trustees and officers of said town, and the only persons having said funds in their possession, or under their control, and demanded of them the surrender to the plaintiffs, as such trustees, of all the books, papers and property of every description in their possession

belonging to said town, but that the appellees then and there re-- fused, and still refuse, to surrender the same to the appellants. The plaintiffs below prayed that an alternative writ of mandate might be issued against the appellees, requiring them and each of them to surrender to the appellants the books, papers and funds belonging to said town, in their possession or subject to their control, or in the possession or subject to the control of either of them, or show cause to the contrary.

The complaint was duly verified by the appellants. An alternative writ of mandate, reciting the complaint, was issued in due form by the court, requiring the appellees to surrender the books, papers and property in their possession, belonging to said town, to the appellants, or show cause why they should not.

The appellees appeared and demurred to the writ for the following reasons:

First. Because the said plaintiffs have not capacity to sue.

Second. Because said alternative writ does not state facts. sufficient to constitute a cause of action.

The court sustained the demurrer and rendered final judg- ment for the appellees. The plaintiffs appealed and assign as error the sustaining of said demurrer.

The question presented by the record for decision is, have the appellants, as the trustees of the town of Clarksville, a. right to the possession of the books, papers and funds belong- ing to the town, or the right to the possession of any of them?

The town of Clarksville, embracing within its boundaries 1,000 acres of land, was laid out as a town under an act of: the State of Virginia in 1783. At that time the State of Vir- ginia claimed to be the owner of the territory northwest of the Ohio river, embracing the State of Indiana. The Assem- bly of Virginia granted to "Col. George Rogers Clark, and. the officers and soldiers who assisted in the reduction of the. British posts in the Illinois," one hundred and fifty thousand, acres of land on the northwest side of the Ohio river. By a. statute of Virginia, passed in 1783, a board of commissioners,

was created for the purpose of locating and surveying the grant. It was made the duty of this board to lay out "one thousand acres at the most convenient place" in said grant, "for a town." By the 2d section of said act it was provided, "that a plat of the said one thousand acres of land laid off for a town, shall be returned by the surveyor to the court of the county of Jefferson, to be by the clerk thereof recorded; and thereupon the same shall be and is hereby invested in William Fleming, John Edwards, John Campbell, Walker Daniel, George Rogers Clark, John Montgomery, Abraham Chaplin, John Bailey, Robert Todd, and William Clark, gentlemen, trustees, to be by them, or any five of them, laid off into lots of half an acre each, with convenient streets, and public lots, which shall be and the same is hereby established a town by the name of Clarksville."

It was further provided in the 2d section of said act, "That after the said lands shall be laid off into lots and streets, the said trustees, or any five of them, shall proceed to sell the same, or so many as they shall judge expedient, at public auction, for the best price that can be had, * * * and the money arising from such sale, shall be applied by said trustees in such manner as they may judge most beneficial for the inhabitants of the said town; * * * and, in case of the death, removal out of the county, or other legal disability, of any of said trustees, the remaining trustees shall supply such vacancies by electing others, from time to time, who shall be vested with the same powers as those particularly nominated in this act." 1 G. & H. 723.

In the case of *Carr* v. *McCampbell*, 61 Ind. 97, the court, in speaking of the act of the State of Virginia of 1783, says:

"It is a part of the history of this State, of which we take notice, that this grant of land by Virginia to the officers and and soldiers of Col. George Rogers Clark's Illinois Regiment, sometimes called 'Clark's Grant,' and sometimes the 'Illinois Grant,' was surveyed and located adjacent to the falls of the Ohio river, lying chiefly in Clark county, but extending west-

ward into Floyd county, and northward into Scott county, in this State; and that the town of Clarksville was located and laid out.in the two counties of Clark and Floyd, and abutting on the Ohio river."

By the cession of the territory northwest of the Ohio river to the United States, the jurisdiction of the State of Virginia over the same ceased, and by the admission of Indiana into the Union as a State, sovereign jurisdiction, except for national purposes, over the town of Clarksville, passed to and vested in her.

By the 16th section of the schedule of rights annexed to the present constitution of the State, it is provided that "The General Assembly may alter or amend the charter of Clarksville, and make such regulations as may be necessary for carrying into effect the objects contemplated in granting the same; and the funds belonging to said town shall be applied according to the intention of the grantor."

The only charter which the town of Clarksville had, at the time of the adoption of the present constitution, was that provided by the statute of Virginia, hereinbefore referred to. It is obvious, therefore, that the purpose of section 16 of the schedule was to authorize such legislation as might be necessary to carry into effect the objects contemplated by the Virginia statute of 1783, and to secure the application of the money arising from the sale of the lots in the town to purposes intended to be promoted by Virginia, the grantor, as expressed in said act.

The act of June 17th, 1852, was passed with the view of accomplishing the purposes suggested by the 16th section of the schedule to the constitution. Its title is, "An act amendatory of the charter of. the town of Clarksville, in Clark and Floyd counties." The 1st section provides: "That the number of trustees for said town shall be hereafter limited to three, to be elected in the manner following, to wit: One to be appointed by the board doing county business for the county of

Clark, who shall be a resident of said county; one to be appointed by the board doing county business for the county of Floyd, to reside within said last named county; and the third to be elected by the qualified voters residing within the bounds of said town of Clarksville, who shall be a householder and resident voter within the same, who shall severally continue in office for one year after their election, and until successors are duly elected and qualified, which election shall be made annually on the first Monday in September."

The 3d section provides that such trustees, when so elected, " shall be vested with all the powers and perform all the duties incident to said office of trustee, heretofore possessed and performed by their predecessors, together with such other powers and duties as may be prescribed by law. They shall appoint a secretary, treasurer, marshal, with such other officers and agents as may become necessary for the transaction of their business." They are authorized to adopt by-laws for the government of the corporation.

By the 4th section, the trustees are authorized to prescribe the duties of the officers appointed by them, and fix their compensation.

The 5th section provides that, "So soon as the said board shall be organized and qualified, the said trustees shall forthwith call upon the late trustees and officers of said corporation, and demand of them the surrender up to said new trustees of all the books, papers and property of every description in their possession belonging to said corporation; and if not surrendered on demand they are hereby vested with all the necessary authority to compel the same by due process of law."

The 6th and subsequent sections of the act provided for the application of the funds which may come into the hands of the trustees, to school purposes, and need not be particularly noticed.

It is alleged that one of the appellants was appointed a trustee by the board doing county business for the county of Clark, and that he resided in said county; that another was

appointed by the board doing county business in the county of Floyd, who resided therein; that the third was elected by the voters of said town of Clarksville, and that he was a householder and resident voter within the same.

It would seem to follow from the facts stated in the complaint and admitted by the demurrer, that the capacity of the appellants to sue, as the trustees of the town of Clarksville, is beyond question, unless, indeed, the act of June 17th, 1852, is invalid and void.

It is insisted by the counsel for the appellees, that in so far as the act of June 17th, 1852, authorizes, or attempts to authorize, the appellants, as trustees of the town of Clarksville, chosen pursuant to its terms and acting under its provisions, to demand or recover from the appellees any part of the funds described in the complaint and writ, it is in violation of the constitution of the United States and of this State. The appellees claim that, under the act of Virginia, they, by accepting the trust therein created, became vested with the legal title to the 1,000 acres of land, and that the State of Indiana had no power to divest them of the title so acquired; that, by accepting the title they entered into a contract with the State of Virginia, the obligations of which can not be impaired by State legislation or constitutional amendment; that to divest them of the custody, control and management of the money arising from the sale of lots in the town of Clarksville, would not only impair but destroy said contract, and defeat the intention and purpose of the State of Virginia in creating the trust. It may be conceded, that if the act of June 17th, 1852, will have the effect to impair the obligation of any contract made between the State of Virginia and the appellees, it is so far void.

But it is quite clear that the donation of the 1,000 acres of land was made by the State of Virginia for the benefit of the inhabitants of Clarksville, and not for the benefit of the trustees in whom the legal title to said land was vested. It may also be assumed as indisputably true, that the trustees took

the title upon the condition that they would discharge the trust, and faithfully dispose of the land and apply the proceeds as directed by the act creating the trust and vesting the title. Where, as is charged in this case, the trustees have ignored, for almost a century, the trust, and failed to apply the money received to the uses and purposes for which it was intended, they may be removed and required to pay over to new trustees the money held by them in defiance of the rights of the *cestui que trust.* Perry on Trusts, sections 275, 276, 281, and cases cited by him.

Whatever control the State of Virginia, through its courts or otherwise, might have exercised over the trustees nominated in the act of 1783, before the cession of the Northwest Territory to the United States, might be legitimately exercised by the State of Indiana, at any time since its organization as a State.

It was obviously the purpose of the act of June 17th, 1852, to provide for the application of the funds which had arisen from the sale of lots in Clarksville to the purposes contemplated by the act of Virginia. The complaint in this case shows that lots in said town had been sold, and that some $12,000 had been received by the appellees from such sales, which had never been applied in accordance with the law. It charges the appellees with having abused their trust, and with misapplying the trust funds, and asks that they shall pay over to the appellants, as the legally chosen representatives of the inhabitants of said town, the trust fund, that they may apply it to the use and for the benefit of the inhabitants of the town in the construction of a school-house and in payment of the tuition of their children. Had the appellees applied the funds as received for the benefit of the inhabitants of Clarksville, the trust would have been executed long ago, and the donees would have been in the enjoyment of the fund. Through the appellants, as their legally constituted trustees, they now demand the fund, that it may be applied for their benefit. Upon the facts stated, we think the appellees should respond by a

surrender of the funds so long withheld by them from those for whose use they were intended.

Assuming as we do, that the act of June 17th, 1852, is valid, do the facts stated in the writ entitle the appellants to the relief demanded, or to any part of it? The demurrer admits the facts stated in the writ, so far as they are well pleaded. It admits that the appellants are the trustees, properly elected and qualified, of the town of Clarksville; that they, as such trustees, demanded of the appellees, before the commencement of these proceedings, the books, papers and property in their possession, belonging to the town of Clarksville; it admits that the appellees had in their possession, books, papers and property belonging to said town, and that, upon demand, they refuse to surrender the same to the appellants, as trustees of said town; it further admits that the appellees claimed to be the former trustees of said town, and that, as such, they had possession of books, papers and money belonging to the town of Clarksville. Upon these facts are the appellants entitled to the surrender to them, in this proceeding, of the books, papers and money, or either of them? If entitled to the books, or to the books and papers, though not to the money, the demurrer to the writ should have been overruled.

It is, we think, quite clear that the proper and appropriate remedy to recover the books and papers belonging to the town of Clarksville is the one adopted in this case. "Wherever the term of an officer has expired, he may be compelled by mandamus to turn over to his successor all records and books pertaining to his office to which the public are entitled to access. And the writ may even be granted for this purpose in aid of the person declared duly elected to the office." High on Extraordinary Legal Remedies, section 74. ·

DILLON says: "Mandamus  *  is a proper remedy for the duly elected officer of a municipal corporation to obtain possession of the seal, books, papers, and records appertaining to such office, from his predecessor." Dillon Munic. Corp., section 684.

Frisbie *et al.*, Trustees of Clarksville, *v.* Fogg *et al.*

There can be no doubt, we think, that the facts stated in the complaint entitled the appellants to the books and papers belonging to the town of Clarksville.

In the case of *Commonwealth* v. *Comm'rs of Allegheny County*, 37 Pa. St. 277, Justice THOMPSON says:

"Mandamus is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them. It follows, therefore, that those to whom it may be appropriately directed, owe some duty to the public, and are under obligation to perform it; and for the enforcement of which there is no other specific legal remedy."

The appellees, since the passage of the act of June 17th, 1852, have held the funds of the town of Clarksville, according to the averments of the complaint, in trust for the education of the children of the town, for by the act the funds are devoted to school purposes. They owed some duty to the public as to those funds. It was their duty under the law, upon the expiration of their term of office, to pay over to the officers chosen to secure the same, the funds belonging to said town for the benefit and tuition of the children living therein, and to deliver to their successors the books, papers and records of said town; and this was a part of their official duty. It is an implied condition, annexed to every office, that the incumbent shall, at the expiration of his term of office, pay over to the person appointed by law to receive them the public funds which may have come into his hands as such officer. It may possibly be said that it is to be presumed that the appellants, as trustees, had appointed a treasurer of said town, and made it his duty to receive and hold said funds. But nothing of this kind is alleged in the complaint. It states that the appellants are, as trustees of the town, entitled to the funds sued for, and the act of June 17th, 1852, expressly authorized them to sue for and recover the same by due process of law.

In the case of *Johnson* v. *Smith*, 64 Ind. 275, in which the appellants sought to compel the appellee, by mandamus, to pay

over to them, as school trustees of Monroe City, funds which had come into his hands improperly, belonging to the school corporation of Monroe City, the court say:

"Whatever sums of money the appellee had received, by reason or on account of the school children, residing within the territorial limits of the school town of Monroe City, or transferred thereto for school purposes, the appellants, as soon as they had qualified and organized, as by law required, as the trustees of said school town, had the right to demand and receive from the appellee, and he could not lawfully withhold it upon any ground. He held and had received the money in trust for the tuition of those children, and the appellants alone, as the trustees of the school town, had the right under the law to apply and disburse the money to and for the purpose for which it was intended."

The above language might be applied literally to the case before us.

Whatever sums the appellees received from the sale of lots in Clarksville, were held by them in trust for the tuition of the children of Clarksville; the appellants, as soon as qualified and organized as the trustees of said town, had a right to demand and receive such funds, and the appellees could not lawfully withhold such funds on any ground. They held such funds in trust for the school children of Clarksville, and the appellants, as the trustees of said town, had the right, under the law, to apply and disburse the funds for their benefit.

It may be said that, in the case from which we have just quoted, as well as in the case now in hearing, the trustees might have sued for and recovered the money in an ordinary action under the code, and that, therefore, this proceeding for the money can not be sustained. The law gives no specific remedy in this case, nor can it be said that an action under the code would be adequate. The necessities which might call for the prompt disbursement of school funds, and the unsecured condition of the money, might render an action under

the code inadequate and insufficient. It has been repeatedly held, that, where there is a clear legal right in the relator, the writ will not be refused merely because there is a remedy in equity, or a remedy at law, if it is applicable to the purpose. *The Indianapolis, etc., R. R. Co.* v. *The State*, 37 Ind. 489.

We think the demurrer to the complaint should have been overruled.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellees,