## CARROLL et al. v. STATE ex rel. MOSIER et al.

No. 11458—Opinion Filed Nov. 23, 1920.

Rehearing Denied Jan. 5, 1921.

(Syllabus by the Court.)

1. **Elections — Statutory Procedure — Effect of Departure.**

Statutes regulating the mere mode of conducting an election are directory and the departure from such mode will not necessarily defeat the election.

2. **Judgment—"Final Judgment."**

A final judgment is one ending a particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties.

3. **Mandamus—Nature of Writ.**

Mandamus is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them. It follows, therefore, that those to whom it may be appropriately directed, owe some duty to the public, and are under obligation to perform it; and for the enforcement of which there is no other specific legal remedy.

4. **Municipal Corporations—Cities of First Class—Powers of Commissioners.**

The board of city commissioners in a city of the first class exercises the powers granted to and conferred upon such cities, as provided by law.

5. **Same—City Charter—Amendment — Procedure—Duty of Commissioners.**

Where the charter of a city prescribes the method of amendment and makes it the duty of the board of city commissioners to submit proposed amendments to be voted upon by the qualified electors of the city, which amendments, after they shall have received a majority vote of the qualified electors, shall become effective after their approval by the Governor, it is the duty of the board of city commissioners to certify such amendments to the Governor, for his approval or rejection, after they shall have been regularly voted upon and shall have received a majority vote of the qualified electors of the city, and this duty of the board of city commissioners is none the less mandatory because not specifically stated in the provision of the city charter prescribing the method of amendment.

6. **Same—Validity of Election.**

The duty of the board of city commissioners to certify amendments to the Governor being purely ministerial, such board, where the election returns are regular upon their face, cannot question the validity of the election or of the amendments proposed.

Error from District Court, Osage County; Preston A. Shinn, Judge.

Action by the State, on relation of W. T. Mosier and others, for writ of mandamus to R. L. Carroll, J. M. Buckley, H. M. Loomer, Commissioners of the City of Pawhuska, and

others. Judgment for plaintiff, and defendants bring error. Affirmed.

E. L. McCain, City Atty., Stuart, Sharp & Cruce, L. P. Mosier, and Grinstead & Scott, for plaintiffs in error.

Leahy, MacDonald, Burnett & Files and Peters, Holcombe & Holden, for defendants in error.

PER CURIAM. This is an action for mandamus brought by defendants in error in the district court of Osage county against the commissioners of the city of Pawhuska and others, to compel them to certify certain amendments voted upon at the election held in the city of Pawhuska on the 6th day of April, 1920, together with a record of the proceedings submitting the same, with the returns of the county election board, to the Governor.

Article 10, sec. 1, of the charter of the city of Pawhuska provides:

"Article 10. **Amendments, Repeals.** Section 1: **Amendments.** Whenever a petition containing a proposed amendment to this charter, signed by a number of qualified electors of said city equal to twenty-five per cent. of the total number of votes cast at the next preceding general municipal election, shall be filed in the office of the commissioner of finance and accounts, the board of commissioners shall submit such proposed amendments to the qualified electors of the city at the next election held in the city, except at an election invoking the recall provisions of this charter, and if at such election a majority of said electors voting thereon shall vote for said proposed amendment the same shall thereupon become an amendment to, and a part of this charter, when approved by the Governor and filed in the same manner and form as this charter."

In·cause 11295, styled "The State of Oklahoma ex rel. W. T. Mosier v. Carroll and Buckley, City Commissioners," this court, on March 29, 1920, construed said article 10 of the said charter and held that it was self-executing and provided a complete methods for amendment of such charter, and ordered that the defendants submit proposed amendments to the electors of the city of Pawhuska at the election to be held on April 6, 1920.

The judgment of the court in said case is as follows:

" * * * And the court, after hearing the evidence and arguments of counsel, and being fully advised in the premises, finds:

"(1)    That the city of Pawhuska is a city of the first class, having heretofore adopted a charter form of government; that the defendants are the duly elected, qualified, and acting commissioners of said city of Pawhuska, and that the commissioner of finance and accounts, formerly elected to that office, has resigned and no one has been elected to fill such vacancy, and the two defendants named herein constitute the board of city

commissioners and did so constitute said board during the time mentioned in said petition of the plaintiff.

"(2)    The court further finds that the charter of said city of Pawhuska provides, in article 10, of said charter, a complete method of procedure for amendments to said charter.

"(3)    The court further finds that the said article 10 of said charter is self-executing, and that the provisions of the statute governing initiative and referendum measures do not apply.

"(4)    The court further finds that the petitions have complied with the requirements of said charter insofar as the same applies to proceedings to amend the charter, and they are entitled to the relief prayed for.

"It is therefore ordered and adjudged by the court that the defendant, R. L. Carroll, as commissioner of public affairs and safety, and ex-officio mayor of the city of Pawhuska, and J. M. Buckley, commissioner of streets and public property, acting commissioner of finance and accounts, and ex-officio city clerk, be and they are hereby ordered to submit the proposed amendments requested in the petitions filed with the said J. M. Buckley, to the electors of the city of Pawhuska at the election to be held on April 6, 1920.

"Thos. H. Owen, Chief Justice."

A further hearing on this matter was held on April 2, 1920, and the motion of the defendants for modification of this judgment denied, whereupon it became final. Thereafter, on April 3, 1920, said city commissioners, in compliance with said order of this court, entered their order submitting the said amendments to the electors of said city as follows:

"Wherefore, in compliance with an order of the Supreme Court of the state of Oklahoma, issued by said court on April 2, 1920, and served on the members of this board, we hereby order that the proposed amendments requested in the petition filed with J. M. Buckley, as acting commissioner of finance and accounts of the city of Pawhuska at the election to be held on April 6, 1920; and

"It is further ordered that a copy of this order, together with a copy of the amendments proposed, attached to said petition, and a copy of the order of the Supreme Court above referred to, be furnished to L. P. Mosier, secretary of the Osage county election board, by the acting commissioner of finance and accounts and ex-officio city clerk, at his very earliest convenience."

In pursuance of this order of the city commissioners, said J. M. Buckley, acting commissioner of finance and accounts and ex-officio city clerk, transmitted the said order to the said L. P. Mosier, secretary of the county election board, together with the copy of the amendments proposed, attached to said petition, and a copy of the order of

this court. This communication was received by the said secretary of the county election board and filed by him on the same date.

Thereafter the county election board prepared the necessary ballots and supplied them, together with the regular and necessary election supplies, to the election officials of the city of Pawhuska, and said amendments were duly submitted to the electors of the city of Pawhuska at the general election held on the 6th day of April, 1920. Eight hundred sixty-eight votes were cast in favor of the adoption of said amendments and 41 against. The votes were duly canvassed and the results thereof returned to the election board, which canvassed the returns and declared the result and certified the same to the board of city commissioners. The returns of the said election are regular and valid on their face, but it is urged by the plaintiffs in error that the certificate of the chairman of the county election board is not attested by L. P. Mosier, the then secretary, and that the seal of the county election board is not attached thereto. Mr. Mosier, who was at the time counsel for plaintiffs in error, refused to participate in the election or the certifying of the returns. The signature of the chairman of the county election board is attested by the other member of the board, acting as temporary secretary. The mere fact that the returns made to the board of city commissioners were attested by another than the regular secretary would not invalidate them. If the secretary was so remiss to his duty as secretary of the county election board as to act as counsel for parties trying to prevent the election while at the same time he was continuing to hold the office of secretary of the county election board, neither these parties nor their attorney are in a position to complain because the certificate of the chairman of the county election board was not attested by the regular secretary. Statutes regulating the mere mode of conducting an election are directory, and a departure from such mode will not generally defeat the election. Enos v. State, 131 Ind. 560, 31 N. E. 357; Goss v. State, 34 Ind. 425.

After the returns of the election had been made to the city commissioners by the county election board, the defendants in error herein requested the city commissioners to submit the amendments to the Governor for his approval or rejection. This they refused to do, and on April 30, 1920, the defendants in error herein commenced this action in the district court of Osage county against the plaintiffs in error herein for a peremptory writ of mandamus to compel said city commissioners to discharge their official duties in submitting said amendments to the Governor. It is from this peremptory writ awarded on May 8, 1920, that this appeal is prosecuted.

Plaintiffs in error attempt to have reviewed the matters decided by this court in their judgment of March 29, 1920, filed April 2, 1920, on the theory that said judgment was merely interlocutory; but this contention cannot be sustained. The order on April 2, 1920, became final, and the compliance therewith by the city commissioners in the holding of the election in the city of Pawhuska on April 6, 1920, leaves nothing further to be adjudicated thereon.

A final judgment has been determined to be one ending a particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties. Oklahoma City Land & Development Co. v. Patterson, 73 Oklahoma, 175 Pac. 934.

The matters adjudicated by said order of this court have therefore become res judicata and will not be further considered herein. The only questions remaining for consideration are whether it was the duty of the plaintiffs in error to present the amendments to the Governor and whether the record presents a state of facts which might excuse their refusal to do so.

Section 3-a, article 18 (section 329, Williams') Constitution, provides that cities containing more than two thousand inhabitants may form a charter for their own government.

Section 533, Rev. Laws 1910, vitalizes the foregoing section of the Constitution, and sections 534-538, Rev. Laws 1910, prescribe the election procedure for the preparation and adoption of a charter.

Section 539 provides that when such charter is adopted and approved as provided by the Constitution and the foregoing statutory provisions it shall be the supreme law for the government of such city, and if the same conflicts with any of the state laws, the provisions of such charter shall prevail. Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. State, 29 Okla. 255, 116 Pac. 913; City of Collinsville v. Ward, 64 Okla. —, 165 Pac. 1145.

Section 542, Rev. Laws 1910, provides:

"The powers granted to and conferred upon cities shall be exercised by the mayor and council, or other governing body, of such cities, as provided by law." Lackey et al. v. State ex rel. Grant et al., 29 Okla. 255, 116 Pac. 913.

It will be observed that section 1 of article 10 of the charter of the city of Pawhuska, quoted herein, provides that proposed amendments to the charter shall be submitted to the electors by the board of commissioners, but is silent as to who is charged with the duty of certifying the amendments to the Governor if they receive a majority vote of the qualified electors voting thereon. It must be evident that this duty is one incident to the election and incumbent upon the board of city commissioners. It is made the duty of the board of city commissioners to submit amendments to be voted upon, and it therefore becomes the implied duty and one incumbent upon the board of city commissioners to certify the amendments to the Governor for his approval or rejection when they have received a majority vote of the qualified electors. A duty is none the less mandatory because implied. It has long been the rule that mandamus will lie to compel an official to turn over to his successor the records of his office. The duty is not one necessarily prescribed by statute, but is one implied as a condition of the election and succession to an office. Frisbie et al. v. Fogg et al., 78 Ind. 269 ; Commonwealth v. Commissioners of Allegheny County, 37 Pa. St. 277.

In the Frisbie Case it is said:

" 'Mandamus is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them. It follows, therefore, that those to whom it may be appropriately directed, owe some duty to the public, and are under obligation to perform it; and for the enforcement of which there is no other specific legal remedy.' "

"The appellees, since the passage of the act of June 17, 1852, have held the funds of the town of Clarksville, according to the averments of the complaint, in trust for the education of the children of the town, for by the act the funds are devoted to school purposes. They owed some duty to the public as to those funds. It was their duty under the law, upon the expiration of their term of office, to pay over to the officers chosen to secure the same, the funds belonging to said town for the benefit and tuition of the children living therein, and to deliver to their successors the books, papers, and records of said town; and this was a part of their official duty. It is an implied condition, annexed to every office, that the incumbent shall, at the expiration of his term of office, pay over to the person appointed by law to receive them the public funds which may have come into his hands as such officer."

The board of city commissioners in a city of the first class exercises the powers granted to and conferred upon such cities, as pro-

vided by law. Lackey et al. v. State ex rel. Grant et al., supra.

Where the charter of a city, as herein, prescribes the method of amendment and makes it the duty of the board of city commissioners to submit proposed amendments to be voted upon by the qualified electors of the city, which amendments, after they shall have received a majority vote of the qualified electors, shall become effective after their approval by the Governor, it is the duty of the board of city commissioners to certify such amendments to the Governor, for his approval or rejection, after they have been regularly voted upon and shall have received a majority vote of the qualified electors of the city, and this duty of the board of city commissioners is none the less mandatory because not specifically stated in the provision of the city charter prescribing the method of amendment.

Nor does the record present a state of facts which can excuse their refusal to do so. The duty of the board of city commissioners in this matter being purely ministerial, they cannot, where the election returns are regular upon their face, question the validity of the election. Stearns v. Biggers, 23 Okla. 462, 100 Pac. 109 ; Kingfisher County Election Board v. State, 43 Okla. 337, 142 Pac. 984.

In Stearns v. Biggers, supra, this court said:

"The duty of the city council to canvass the returns as made to them by the election boards of the different precincts in the city is purely ministerial. Sitting as a canvassing board, they are without any judicial discretion in the matter. Their sole duty and power consists in tabulating and casting up the vote as shown by the returns made to them and declaring the results thereon. Plaintiffs in error refused to canvass the returns from the First ward of the city, because of the alleged fraud and irregularities of the election board of that precinct in canvassing the vote and making the return thereof. Such irregularity and fraud did not appear upon the face of the returns, nor was there any irregularity in the returns themselves appearing from the contents thereof; and upon their face they were regular in form and valid. The alleged fraud of the election officers of the First ward, which plaintiffs in error allege excuses them from the performance of their duty was made known to the board by the protest of some of the citizens of the city against the canvassing of the vote in that precinct, which protest was supported by affidavits of various voters living in said precinct filed with the election board. To determine whether the votes of that precinct had been falsely and fraudulently counted and returned, as charged, would have required a hearing and an adjudication of that question. Such acts would

have constituted a judicial proceeding which the canvassing board has no power to undertake." (Citing a number of cases.)

Quoting from State v. Steers, 44 Mo. 223, the court said:

" 'To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate, where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure is to infringe or destroy the rights of parties without notice or opportunity to be heard—a thing which the law abhors and prohibits. Admit the power, and there will be no uniformity. One canvassing officer will reject for one thing, and another for a different matter; and no man can tell whether he is legally elected to an office until he consults the notions of a canvasser. The exercise of such a power is subversive of the rights of the citizen, and dangerous and fatal to the elective franchise.' * * *

"It is the general policy of the law to place the jurisdiction of questions affecting the validity and regularity of elections in the courts, who are farther removed from prejudices and excitement that often attend elections, and are more competent to hear, determine, and adjudicate such questions. * * *

"Mr. Merrill in his work on Mandamus (paragraph 180), after stating the general rule that no evidence will be received on the return to an alternative writ of mandamus against a canvassing board that the canvassers themselves could not receive and hear, refers to this case, and states that the doctrine therein announced is in harmony with the general rule because the facts therein were undisputed."

Plaintiffs in error further attempt to question the legality of the amendments. This they cannot do. In Threadgill v. Cross, 26 Okla. 403, 109 Pac. 558, which was a mandamus proceeding to compel the Secretary of State to perform the purely ministerial duty imposed upon him by the statute and the Constitution to file initiative petitions for the submission of amendments to the Constitution to a vote of the people, this court held that the Secretary of State could not, as a part of his defense for refusal to do so, question the validity of such proposed amendment upon the ground that it was violative of an act of Congress, the terms and conditions of which had been accepted by the state, and for that reason it would be void if adopted.

In State v. Mayor, etc., of Monroe, 46 La. Ann. 1276, 15 South. 625, it is held that the promulgation of the returns of election of the vote of taxpayers to determine whether a tax is to be imposed in aid of railroad enterprises is a ministerial duty, obedience to which will be compelled by mandamus; and that the officials charged with the duty, when called on to promulgate the result, can raise no question of fraudulent voting or other objection to the validity of the tax, nor have such officials any discretion or power to withhold or refuse that promulgation.

A purely ministerial officer cannot ignore or avoid a law which he deems to be invalid. Threadgill v. Cross, supra; Cook v. Board of Education, 61 Okla. 152, 160 Pac. 1124; State ex rel. Freeling v. Lyon, 63 Okla. 285, 165 Pac. 419.

The other matters urged by the plaintiffs in error are not material to a decision herein.

For the reasons stated, the judgment of the district court is affirmed.