STATE ex rel. MURRAY, Governor

v.

BEARD et al.

No. 36257.

Supreme Court of Oklahoma.

Dec. 7, 1953.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., J. Harry Johnson, Asst. Atty. Gen., for petitioner.

Chal Wheeler, Muskogee, for respondents.

## PER CURIAM.

Essential facts to present this controversy are as follows: The Twenty-fourth Legislature in regular session in 1953 adopted House Bill No. 933, approved May 7th, 1953, Chap. 6a, p. 357, S.L.1953, dealing generally with turnpikes, the construction thereof with proceeds of revenue bonds, etc., and Senate Bill No. 454, approved June 8th, 1953, Chap. 6b, p. 370, S.L.1953, dealing with the same general subject-matter and providing some additions and amendments to the House Bill. 69 O.S. Supp. § 652 et seq.

Before the effective date of these acts respondent Beard on July 7, 1953, filed with the Secretary of State copies of Referendum Petition 105, State Question 359, as to Senate Bill 454 of the 24th Oklahoma Legislature, and Referendum Petition 106, State Question 360, as to House Bill 933 of the 24th Oklahoma Legislature intended to be circulated for the securing of signatures of citizens and legal voters of the State of Oklahoma. The same person on September 10, 1953, filed with the Secretary of State completed petitions signed by a sufficient number of citizens and legal voters to accomplish the referendums desired. After due notice as provided by law, and there being no protest, these petitions by order of the Secretary of State on September 23, 1953, were held sufficient to order the referendum of the two legislative acts.

34 O.S.1951 § 8, allows ten days to appeal from this order. This time expired October 3, 1953, without any appeal, and thereupon the approval order of the Secretary of State became final. The proponents have failed to submit a ballot title for either referendum question as required by 34 O.S. 1951 § 9.

This action seeks to compel the filing of ballot titles now, upon the theory that far more than a reasonable time therefor has passed and that respondents have not presented such ballot titles nor indicated when they would do so.

The respondents, while agreeing in effect that they "are to prepare ballot titles" for submission to the Secretary of State and to the Attorney General for approval, contend that there is no urgency in the matter and no necessity or legal requisite demanding and/or requiring that these ballot titles be prepared and submitted at this time or at any time in the near future.

Thus while expressing the intention to prepare and submit these two ballot titles, the respondents, in pleadings filed herein, are very indefinite as to when they expect to do so. In oral argument they state in effect that they expect to submit such titles by May 1, 1954, as if to argue that a discretion exists to perform this duty at any time in seven months after the duty arises.

Respondents take the view and express the desire that these two propositions should be submitted to a vote of the people only at the next regular election held throughout the state, and they contend that their delay in submitting ballot titles is compatible with such view and desire, and is within their lawful rights.

Article 5, Section 3 of the Constitution of Oklahoma provides in part:

"* * * All elections on measures referred to the people of the State should be had at the next election held throughout the State, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. * * * Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise. * * * The Legislature shall make

suitable provisions for carrying into effect the provisions of this article."

The Legislature has implemented the foregoing provisions of the Constitution by the passage of Title 34, O.S.1951 § 12, which provides:

"Whenever a petition is accepted and its title has been decided upon the Secretary of State shall, in' writing, notify the Governor, who forthwith shall issue a proclamation setting forth the substance of the measure and the date of the referendum vote. R.L.1910, § 3379."

and section 25 which provides:

"Whenever any measure shall be initiated by the people in the manner provided by law, or whenever the referendum shall be demanded against any measure passed by the Legislature, same shall be submitted to the people for their approval or rejection at the next regular election; provided, the Governor shall have power, in his discretion, to call a special election to vote upon such questions, or to designate the mandatory primary election as a special election for such purpose. R.L. 1910, § 3394; Laws 1916, ch. 32, p. 89, § 2."

The contention of respondents amounts to a claim upon their part, under the guise of reserved legislative authority, of the right to delay the submission of such propositions to a vote of the people of the State, or to delay presenting ballot titles so as to fix or influence the election date on the measures. Such claimed right is expressed in neither the Constitution nor Statute; to the contrary, the power provided for therein to fix the date of such election is definitely *reposed in "the Governor * * * in his discretion,* to call a special election to vote upon such questions, *or* to designate the mandatory primary election as a special election for such purpose."

Clearly it was contemplated by the Constitution, Art. V, Sec. 3, and by the Legislature, 34 O.S.1951 § 25, that in some circumstances the Governor could and should call a special election for referendum measures, in any such instance the discretion to rest wholly with the Governor. There is no provision of law that permits any of the proponents of a referendum to directly or indirectly control or influence or prevent the Governor from freely exercising his discretion. To permit a person submitting a referendum to exercise unlimited discretion as to delay in filing a ballot title for the purpose of effecting or controlling the election date, or for the purpose of delaying or preventing the Governor from exercising his discretion as to when the vote on the question should occur, would be an unauthorized interference with the discretion vested in the Governor by both the Constitution and the Statutes.

In final analysis, however, the only justiciable question presented, and the only question for this court to determine in this case is the legal question as to whether the respondent has unlimited discretion as to when he shall first file or present ballot titles.

With that general statement of the positions and contentions of the parties we consider the applicable provisions of our laws in reference to the "referendum." Our Constitution in Art. V, Sec. 2, fully protects the right of the referendum and thereby any legislative act duly referred to the people shall not take effect until approved by vote of the people. However, in recognition of the principle that a percentage of the people should not delay or suspend legislative acts indefinitely there were various regulations of the rights to proceed by referendum. Thus a copy of the petition to be circulated must first be filed with the Secretary of State, and thereafter the completed petition for the referendum signed by five per cent of the legal voters must be filed in 90 days after adjournment of the Legislature. Const. Art. V, Sec. 3; 34 O.S.1951 § 1, and Sec. 8.

The Secretary of State must *forthwith* publish a notice "setting forth the date of such filing." Thereupon any citizen desiring to protest such petition must do so *in ten days* "at which time" the Secretary of State will hear testimony and arguments and decide the matter. If any person de-

sires to appeal to the Supreme Court he must do so *in ten days* and "such court shall give such cause *precedence* over all others." If the Supreme Court be then adjourned, "the Chief Justice shall *immediately* convene the same for such hearing." All this is specifically provided for in 34 O.S. 1951, Sec. 8. (Emphasis given in the foregoing quotations and in subsequent paragraphs or quotations in this opinion is in each instance added by the court.)

34 O.S.1951 § 9 provides in material part that " * * * *when the referendum is ordered* against any measure passed by the Legislature, * * * *it shall be the duty* of the parties submitting such proposition to prepare and file one copy of same with the Secretary of State and one copy with the Attorney General, such copies to contain a ballot title of not exceeding one hundred words, which shall contain the gist of the proposition without any argument or statement either for or against such measure. Within three days after the filing of such copy and ballot title with the Attorney General" he must approve the suggested ballot title or *"within said three days"* submit a substitute ballot title.

There follows in 34 O.S.1951 § 10 a provision for appeal to the Supreme Court *"within ten days"* by any person who is dissatisfied with the ballot title fixed as aforesaid. Such an appellant is by such section required to suggest a substitute ballot title of his own, and upon any such appeal the Supreme Court, by provision of such Sec. 10 aforesaid, may approve either theretofore suggested ballot title, or such court may draft a new ballot title which will comply with the requirements of Sec. 9 aforesaid.

These laws upon comprehensive consideration demonstrate that all procedural steps in connection with the orderly exercise of the rights of the referendum must be performed with dispatch. The fixing of a ballot title, with rights of every one to be heard thereon, is but one of those several procedural steps. We observe that there are four possibilities as to authorship of the short ballot title ultimately to be printed on the ballot to fairly advise each voter of the question presented to him for his yes or no vote. That final ballot title may have been written –1– by the proponent of the measure, –2– by the Attorney General, –3– by the appellant from the first effective approval of ballot title, or –4– by the Supreme Court on appeal. As to the second and third above mentioned ballot title sources there is definite limitation by stated number of days, while as to the first and fourth there is definite requirement of action with dispatch and without delay.

We can find no basis for concluding that the person standing in the position of the proponent of the measure, thus to some extent at least representing the thousands of other signers of the petition, can take his own desired time of weeks or months or longer to take the mere procedural step of implementing his desire as to the formation of the ballot title. We must repeat that this is a mere procedural step, designed to make, in one hundred words or less, a fair statement of the question to be printed on the ballot. Rather, it seems to us the lawmakers might well have had in mind the fact that the person acting as proponent would for ninety days or more have in mind the exact matter and the exact question to be submitted to the voters and could therefore come forward instanter with his suggestion of a ballot title; and that his activity and interest in the matter would furnish sufficient urge and sufficient assurance to bring forward his ballot title suggestion without any delay. In view of the dispatch required of all others, it seems wholly incongruous to argue for an unregulated license or for unlimited time in the original presentation of a suggested ballot title for a referendum question.

We do not find any prior case in which there has been any consideration or construction of the exact provision in 34 O.S. 1951 § 9 that "when the referendum is ordered" it "shall be the duty * * *" to file the copies with ballot title as above noted. It seems to be conceded in the arguments here that in this case this provision became applicable and this duty arose October 3, 1953, when the appeal time expired on the approval of the petitions by the Secretary of State, or when the approval of the sufficiency of the petitions became final. That rule has been applied to initiative peti-

tions in the case of In re Initiative Petition No. 2, of Cushing, Oklahoma, 157 Okl. 54, 10 P.2d 271, and in the case of In re Initiative Petition No. 142, State Question No. 205, 176 Okl. 155, 55 P.2d 455. Thus it is made to appear that in this instance there has been a disregard of the ballot title duty at least since October 3, 1953, a delay of more than eight weeks.

■ There is some argument of the right and desire of respondents to confer with other petition signers as to this item of the ballot title, but the importance of any such reason for great delay really seems unimpressive in view of the time already elapsed, and the fact that any one dissatisfied with the first approved title may appeal therefrom. 34 O.S.1951 § 10. Furthermore, the whole matter to be voted on is supposed to be fully presented to the electorate before election day thereon, and in practice it is so. 34 O.S.1951 §§ 13, 15 and 17. We repeat that the sole purpose of the ballot title is to print a fair short form statement of the question to be voted on. No one should seek an unfair advantage in this ballot title statement, and all can have their say, in an orderly manner, as to what the ballot title should contain, thus making it certain that no person will have an unfair advantage by reason of the verbiage printed on the ballot.

With those rights and safeguards the whole matter should move forward with reasonable dispatch as to all procedural steps, to clear the way for a vote by the people.

■ It is argued that neither of these three respondents could be, or should be, forced to do and perform the physical act of writing and submitting these two ballot titles. Be that as it may, it might well be said, as above indicated, that the respondents have already lost or abandoned or waived their primary right to suggest ballot titles, since they have failed to perform that duty or exercise that right at least since October 3, 1953. At any rate, it seems quite clear that the respondents should now submit these two ballot titles or be held to have waived and abandoned their first right to do so, in which event it would be quite orderly for the Attorney General to submit ballot titles, subject to review, as they would be if any person desires to appeal.

■ We are convinced that the respondents should now submit these two ballot titles in five days, or upon their failure to do so, the right and the duty of the Attorney General to do so in three days should be fully established and upheld. And since this involves a procedural step as above set out, our determination in reference thereto is not any infringement upon or interference with the legislative power.

■ A question has been raised as to the right of the Governor of the State to proceed in this action through the Attorney General upon written direction of the Governor. We resolve that question by application of the constitutional provision Art. VI, Sec. 8, that "The Governor shall cause the laws of the State to be faithfully executed". Such provision in the general language used should support the Chief Executive in every orderly action undertaken to bring about faithful execution of all laws in the general public good. See, also, 74 O. S.1951 § 18b.

Upon consideration of all the foregoing, we have concluded that it is the definite duty of this court to fully sustain this action and the manner and method in which the question is presented for judicial determination.

As to the propriety of relief in nature of mandamus see Const. Art. VII, Sec. 2; 12 O.S.1951 § 1451; 55 C.J.S., Mandamus, § 239, page 452; Carroll v. State ex rel. Mosier, 80 Okl. 89, 194 P. 219; Russell v. Harrison, 33 Okl. 225, 124 P. 762.

The relief here sought is therefore granted in the alternative as follows: The respondents are directed within five days to prepare and submit ballot titles for the two questions presented by these referendums, or in the alternative, if respondents shall fail to submit suggestive ballot titles in five days, then such failure shall be taken as a waiver or abandonment of the original or primary right to suggest and submit such ballot titles, and in that event the right and duty of the Attorney General in three days to suggest and submit such two ballot titles.

without any hindrance of any kind whatever from respondents, shall be fully established, upheld and confirmed.

Our attention is called to the fact that the three respondents here are parties plaintiff in another civil action No. 132000 in the District Court of Oklahoma County recently filed against the Attorney General of Oklahoma in an effort to enjoin and prevent him from drawing and submitting suggested ballot titles in the matters here involved. However, at the beginning of this cause in this court, it was expressly stipulated that said cause No. 132000 should remain in status quo pending determination of this action in this court. Therefore, of course, there is no conflict in jurisdiction, and the matter having been fully determined in this court, that action No. 132000 in the District Court as aforesaid will stand abated and any orders therein made will be considered as withdrawn by action and stipulation of the parties, and by this decision by this court, and no formal action or order in reference thereto is necessary in this court.

The relief sued for herein is granted in the alternative as ordered in this opinion.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, and WILLIAMS, JJ., concur.

O'NEAL, J., concurs in result.

ARNOLD and BLACKBIRD, JJ., dissent.

ARNOLD, Justice (dissenting).

The Constitution vests all legislative power in the State Legislature unless by provision thereof some legislative power is reserved. Art. 5, Const. Sec. 1; Board of Regents of Oklahoma Agricultural Colleges v. Updegraff, 205 Okl. 301, 237 P.2d 131, and cases cited therein; Threadgill v. Cross, 1910, 26 Okl. 403, 109 P. 558, 138 Am.St.Rep. 964; In re Flynn's Estate, 205 Okl. 311, 237 P.2d 903.

The right to initiate laws or refer acts of the Legislature was reserved by constitutional provision, Art. 5, Const. Sec. 1.

This provision was not self-executing. Art. 5, Sec. 3 directs the Legislature to make suitable provisions for carrying into effect the provisions of said article. These acts of vitalization were provided soon after the adoption of the Constitution.

34 O.S.1951 § 8 provides:

"When a citizen, or citizens, desire to circulate a petition initiating a proposition of any nature, whether to become a statute law or an amendment to the Constitution, or for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, *file a true and exact copy* of same in the office of the Secretary of State, and within ninety days after the date of such filing, *the original petition shall be filed* in the office of the Secretary of State, and no petition not filed in accordance with this provision shall be considered. * * *" (Here follow provisions and time limits for protests as to the sufficiency of such petition and appeal from the finding of the Secretary of State as to the sufficiency of any such petition.)

The form of the petition is prescribed by Section 1 of this title, as follows:

"The referendum petition shall be substantially as follows:

"Petition for Referendum

"To the Honorable ——, Governor of Oklahoma * * *:

"We, the undersigned citizens and legal voters of the State of Oklahoma * * * respectfully order that the Senate, or (House) Bill No. ——, entitled, (title of Act, and if the petition is against less than the whole act, then set forth here the part or parts on which the referendum is sought),. passed by the —— Legislature of the State of Oklahoma at the regular,. or (special) session of said Legislature,. shall be referred to the people of the State, * * * for their approval or rejection at the regular, or special election to be held on the —— day of

——, A. D. 19—, and each for himself says: I have personally signed this petition; I am a legal voter of the State of Oklahoma * * *: my residence and post office are correctly written after my name.

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. * * *

"The question we herewith submit to our fellow voters is: Shall the following bill of the Legislature be vetoed: * * *."

Then follow the lines for signatures.

The real question to be submitted is: "Shall the act or measure be approved?" In re State Question No. 236, Referendum Petition No. 73, 183 Okl. 467, 83 P.2d 572; In re State Question No. 216, Referendum Petition No. 71, 180 Okl. 122, 68 P.2d 424.

The form of the petition given by the statute clearly indicates that the title to the act to be referred and a statement of the proposition to be voted upon, or in other words, the ballot title, must be incorporated in the petition for referendum itself. This is true whether the petition be for an initiative measure or for a referendum. In Cress v. Estes, 1914, 43 Okl. 213, 142 P. 411, 412, we said:

"It is conceded that said ballot title is a necessary part of said petition. The language of said section being mandatory in requiring that the copy referred to (this refers to the filing of the copy of the petition required by Section 8, quoted supra) be a true and exact copy of the original petition, if there were no other provisions of the statute on the subject, the court would be compelled to hold the difference in the wording of the copy and the original petition sufficient to prevent its consideration by the Secretary of State, or by this court when presented here * * *."

The court goes on to hold that in that particular case the difference in wording between the copy filed and the original petition, both of which contained the ballot title to be voted upon by the people, was insubstantial and did not affect the substance of the proposed measure and was merely a technical error.

Section 9 of said title 34 provides:

"When a measure is proposed as a constitutional amendment or legislative enactment by the Legislature, when the referendum is ordered against any measure passed by the Legislature, or when any measure is proposed by initiative petition, whether as an amendment to the Constitution or as a statute, it shall be the duty of the parties submitting such proposition to prepare and file one copy of same with the Secretary of State and one copy with the Attorney General, such copies to contain a ballot title of not exceeding one hundred words, which shall contain the gist of the proposition without any argument either for or against such measure. Within three days after the filing of such copy and ballot title with the Attorney General, he shall, in writing, notify the Secretary of State whether or not such proposed title is in legal form and in harmony with the law. Should such title not be in proper form, in the opinion of the Attorney General, it shall be his duty, within said three days, to prepare and file a title which does conform to the law. * * *" (Here follow provisions for transmission of such title, if no appeal therefrom be taken as provided in the next section, to the secretary of the State Election Board and for printing of the ballots.)

The ballot title referred to in this section should, as hereinbefore shown, be a part of the copy of the petition for referendum filed with the Secretary of State and of course, of necessity, if the ballot title is a part of the copy it will be a part of the original petition which is filed with the Secretary of State, as provided by Section 8, quoted supra. Therefore to comply with the provisions of Section 9, last quoted above supra, at the time of the filing of the original petition with all signatures attach-

ed with the Secretary of State a copy of same should be served upon the Attorney General or at least a copy of the title. After being served with such copy the Attorney General has three days in which to approve such ballot title or to propose one which in his opinion conforms to law.

The effective date of an act of the Legislature referred to a vote of the people is postponed and awaits the outcome of the vote, as provided by law; as hereinbefore indicated a time limit is placed on the filing of a petition for referendum and procurement of signatures and the filing of the original petition to refer (90 days after the copy of the petition to refer is filed). The Attorney General has only three days after copy of the original of the petition to refer containing the title, or a copy of the title alone is served on him to suggest approval or changes in the title proposed; thereafter an appeal may be taken as to the wording to the title but must be perfected within 10 days; in case of an appeal the Supreme Court must "give such cause precedence over all others. * * * If the court be at the time adjourned, the Chief Justice shall immediately convene the same for such hearing." The act so referred must be voted on not later than the next general election. 34 O.S.1951 § 25.

All the circumstances indicate that the Legislature intended, as it had the authority to provide, that reference of an act of the Legislature should be accomplished with dispatch. The interpretation of acts of the Legislature, in accordance with the intention of the Legislature, is a justiciable question and, of course, does not constitute an invasion of the independent legislative power of the Legislature.

Procedural steps provided by the Legislature for orderly reference of an Act of the Legislature for a vote are valid if reasonable and designed to effect the reference of an act of the Legislature as intended by the framers and adopters of the Constitution. The procedural requirements hereinbefore referred to were reasonably designed to effect the reserved right to the people to vote on an act of the Legislature

with as much dispatch as practically possible. Nobody contends otherwise.

The proponent, Mr. Beard, and the organization which he represents, filed, as required by law, copy of petition to refer House Bill No. 933, Chap. 6a, p. 357, S.L. 1953, and copy of a petition to refer Senate Bill No. 454, Chap. 6b, p. 370, S.L.1953; within the time required the originals of said petitions, together with necessary signatures, were filed; the copies filed on July 7, 1953, contained in each instance the exact title used by the Legislature when the act was introduced and passed by the Legislature. Of course, the original thereof when filed contained the same title; a copy of the original was not served on the Attorney General.

The following of the procedural steps provided by the Legislature to procure and vouchsafe to the people the important right of referendum will not be viewed technically. If there has been substantial compliance the reference will be declared. 34 O.S.1951 § 24; In re State Question No. 137, Referendum Petition No. 49, 114 Okl. 132, 244 P. 806. The conclusion that the proponent did everything required of him to refer these measures in question, except service of copies of the original petitions or copies of the titles alone on the Attorney General at the time he filed such originals, is inescapable.

The original petitions containing titles (the title of the act used by the Legislature) were filed on July 7, 1953. Thereafter and on October 29, 1953, the Governor directed the Attorney General to bring this action to require the proponents to prepare and serve on the Attorney General the titles proposed, etc. This original action was filed on November 9, 1953. Of course, the Attorney General knew the undisputed facts as we have pointed them out. With knowledge of the fact that the originals of the petitions for reference contained exact copies of the titles employed by the Legislature and that these titles were thoroughly comprehensive the Attorney General did not exercise the authority and duty imposed upon him to file his approval

or suggested changes in the titles. The titles being in the exact words of the Legislature and being thoroughly comprehensive it must be presumed he would have approved same. A consideration of the provisions of the acts demonstrate that the titles used by the Legislature and submitted by Mr. Beard are comprehensive and fairly indicate the contents of the measures and are therefore sufficient.

Mr. Beard, the Governor, the Attorney General, and this court have a public duty to perform in the matter of securing the right of referendum to the people with dispatch. The mistaken view of the law by the Governor and the Attorney General should not for technical reasons be permitted to obviate dispatch in the matter of referring acts of the Legislature to the vote of the people where such delay would serve no useful purpose. The majority opinion correctly points out that the petitions were held sufficient—they are and that determination is final. This court should not extend any further time to Mr. Beard. As pointed out he has done his duty in the matter of filing titles. The Attorney General knows the facts with reference to the titles proposed and should not at this late date be accorded even the very short time prescribed by the statutes, particularly in view of the fact that the titles are perfectly good. To give Mr. Beard time to file titles and serve copies on the Attorney General would be to extend the time for the Attorney General to assert his approval or disapproval and suggested changes, marking the date upon which the short appeal time begins to run. No useful purpose could be served by an appeal in this case. The only thing that could be appealed from would be the wording of the titles, in which instance this court, under the direction of the Legislature, could approve the titles proposed or the titles suggested by the Attorney General or write new ones. We already know what the titles proposed are and, as hereinbefore stated, they are thoroughly comprehensive, succinct, and properly advise a reader thereof what the contents of the acts are.

This is an important public matter. Technicalities should be cast aside and the law declared under the true facts of the case. Mr. Beard should not be given any more time and the Attorney General should not be extended any more time. Under all the circumstances this court should hold that the reference is complete and the referred acts ready for submission by proclamation of the Governor as provided by law. The writ should be denied.

I am authorized to state that Mr. Justice BLACKBIRD agrees with the views herein expressed.